1   DAVID L. KIRMAN (S.B. #235175)
    dkirman@omm.com
2   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars
3   8th Floor
    Los Angeles, California  90067-6035
4   Telephone:     +1 310 553 6700
    Facsimile:     +1 310 246 6779
5
6   ANDREW J. WEISBERG (S.B. # 307519)
    aweisberg@omm.com
    O'MELVENY & MYERS LLP
7   400 South Hope Street
    18th Floor
8   Los Angeles, California  90071-2899
    Telephone:     +1 213 430 6000
9   Facsimile:     +1 213 430 6407

10  Attorneys for Defendants
    Mauricio Umansky and UMRO Realty Corp., a
11  California Corporation, d/b/a The Agency

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15  SWEETWATER MALIBU CA, LLC,              Case No. 2:19-CV-01848-GW-SS

16                  Plaintiff,              **DEFENDANTS MAURICIO**
                                            **UMANSKY AND UMRO REALTY**
17          v.                              **CORPORATION'S NOTICE OF**
                                            **MOTION AND MOTION TO DISMISS**
18  MAURICIO UMANSKY; UMRO REALTY           **COMPLAINT; MEMORANDUM OF**
    CORP., a California Corporation, d/b/a The   **POINTS AND AUTHORITIES IN**
19  Agency,                                 **SUPPORT THEREOF**

20                  Defendants.             **[Supporting Declaration of Andrew J.**
                                            **Weisberg and [Proposed] Order Filed**
21                                          **Concurrently Herewith]**

22                                          Hearing Date:    June 3, 2019
                                            Time:            8:30 a.m.
23                                          Place:           Courtroom 9D, 9th Floor
                                            Judge:           Hon. George H. Wu
24
                                            Date of Filing:  Mar. 13, 2019
25                                          Trial Date:      None Set

26

27

28

PLEASE TAKE NOTICE that on June 3, 2019 at 8:30 a.m. in Courtroom 9D, 9th Floor in the above-entitled court, located at 350 West 1st Street, Los Angeles, CA, 90012, Defendants Mauricio Umansky and UMRO Realty Corp. ("Defendants") will, and hereby do, move the Court for an order dismissing Plaintiff Sweetwater Malibu CA, LLC's Complaint in its entirety and with prejudice.

Defendants bring this Motion pursuant to Fed. R. Civ. P. 12(b)(1), and, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons detailed in the attached Memorandum of Points and Authorities, this Court should dismiss Plaintiff's Complaint with prejudice because Plaintiff lacks standing to bring any of its alleged causes of action, as it has no interest in the property at issue and no right to collect the damages sought in its Complaint.

This Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on April 4, 2019. This Motion is based on this Notice of Motion and Motion, the enclosed Memorandum of Points and Authorities, the concurrently-filed Declaration of Andrew J. Weisberg, all records and pleadings on file in this action, those matters as to which the Court may or shall take judicial notice, such other argument or evidence as the Court may permit at the hearing of this Motion, and all further grounds as the Court deems just and proper.

Dated: April 25, 2019

DAVID L. KIRMAN
O'MELVENY & MYERS LLP

By: _____
              David L. Kirman

Attorneys for Defendants
Mauricio Umansky and UMRO Realty Corp., a
California Corporation, d/b/a The Agency

- 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................ 2

        A.      The Property and the Settlement Agreement ..................................... 2

        B.      The Property is Sold, DOJ Requires it to Pay a $1 million Repair Credit, and Plaintiff Sues Defendants ................................................. 5

III.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE UNDER FED. R. CIV. P. 12(B)(1) OR 12(B)(6) ............................................. 7

        A.      Plaintiff Has No Article III Standing ................................................. 9

                1.      Plaintiff forfeited its interest in the Sweetwater Property and the Sale Proceeds ................................................................ 10

                2.      Plaintiff has not suffered any injury in fact because it has no damages ................................................................................ 13

        B.      Plaintiff is Bound by a Covenant Not to Sue Defendants, and Waived its Claims Against Them ...................................................... 16

        C.      Plaintiff's Complaint Should be Dismissed With Prejudice .............. 17

IV.     CONCLUSION ............................................................................................... 18

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Erie R. Co.,*
2 F.2d 712 (6th Cir. 1924)..................................................................... 17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................... 8, 9, 14

*Balsam v. Tucows, Inc.,*
627 F.3d 1158 (9th Cir. 2010)................................................................. 16

*Cetacean Cmty. v. Bush,*
386 F.3d 1169 (9th Cir. 2004)............................................................. 8, 13

*Chapman v. Pismo Food Store,*
710 F. App'x 769 (9th Cir. 2018) ............................................................. 8

*Chaset v. Fleer/Skybox Int'l., LP,*
300 F.3d 1083 (9th Cir. 2002)................................................................. 15

*Dumas v. Major League Baseball Props., Inc.,*
104 F. Supp. 2d 1220 (S.D. Cal. 2000).................................................. 15

*Ebner v. Fresh, Inc.,*
838 F.3d 958 (9th Cir. 2016)......................................................... 9, 17, 18

*Echavarria v. Adir Int'l., LLC,*
2016 WL 3397416 (C.D. Cal. Jun. 13, 2016) ....................................... 18

*Hobson v. Wells Fargo Bank, NA,*
576 F. App'x 678 (9th Cir 2014) ............................................................ 10

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)................................................................... 8, 9, 10

*Moose Lodge No. 107 v. Irvis,*
407 U.S. 163 (1972)................................................................................ 10

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009).................................................................... 8

*Prescott v. Cnty. of El Dorado,*
298 F.3d 844 (9th Cir. 2002)................................................................... 15

*Resnick v. Hayes,*
213 F.3d 443 (9th Cir. 2000).................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*S. Cal. Gas Co. v. Syntellect, Inc.,*
    534 Fed. Appx. 637 (9th Cir. 2013) ................................................................. 17

*Schmier v. U.S. Court of Appeals for Ninth Cir.,*
    279 F.3d 817 (9th Cir. 2002) ..................................................................... 8, 13

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ...................................................................................... 15

*Spieron, Inc. v. Americanized Benefit Consultants, Ltd.,*
    2018 WL 6844719 (C.D. Cal. Oct. 22, 2018) ............................................ 9, 14, 16

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ............................................................................ 9, 10, 13

*St. Agnes Med. Ctr. v. PacifiCare of Cal.,*
    31 Cal. 4th 1187 (2003) .............................................................................. 18

*United States v. $14,344.50 in U.S. Currency,*
    49 F. App'x 207 (10th Cir. 2002) ................................................................. 11

*United States v. $38,570 U.S. Currency ("$38,570 U.S. Currency"),*
    950 F.2d 1108 (5th Cir. 1992) ................................................................. 11, 13

*United States v. $8,720 in U.S. Currency ("$8,720 in U.S. Currency"),*
    264 F.3d 1140 (5th Cir. 2001) ................................................................. 11, 13

*United States v. Corinthian Colls.,*
    655 F.3d 984 (9th Cir. 2011) ........................................................................ 3

*United States v. Grover,*
    119 F.3d 850 (10th Cir. 1997) ...................................................................... 12

*United States v. Le,*
    173 F.3d 1258 (10th Cir. 1999) .................................................................... 11

*United States v. One Gulfstream G-V Jet Aircraft et al.,*
    No. 1:11-cv-1874, Dkt. 24 (First Amended Complaint) (D.D.C. June 17, 2013) ..................... 3

*United States v. One Michael Jackson Signed Thriller Jacket & other Michael
    Jackson Memorabilia, et al.,*
    No. CV 13-9169 (C.D. Cal. Dec. 12, 2013) ............................................... 2, 3, 5

*United States v. One White Crystal Covered "Bad" Tour Glove et al.,*
    No. 2:11-cv-03582, Dkt. 50 (Second Amended Complaint) (C.D. Cal. June 11,
    2012) ......................................................................................................... 3

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*United States v. Stokes,*

4

191 F. App'x 441 (7th Cir. 2006) .................................................................... 11, 12

5

*Warth v. Seldin,*
422 U.S. 490 (1975) ................................................................................................ 10

6

*Yagman v. Garcetti,*

7

852 F.3d 859 (9th Cir. 2017) .............................................................................. 9, 17

8

*Young v. Crofts,*
64 F. App'x 24 (9th Cir. 2003) .................................................................................. 8

9

10

*Zhang v. Snyder, Inc.,*
2007 WL 2069915 (Cal. Ct. App. July 20, 2007) ................................................... 17

11

**Statutes**

12

Cal. Civ. Code § 1559 .................................................................................................. 16

13

**Other Authorities**

14

Second Vice President of Equatorial Guinea Agrees to Relinquish More Than $30

15

Million of Assets Purchased with Corruption Proceeds, United States
Department of Justice, (October 10, 2014)

16

(https://www.justice.gov/opa/pr/second-vice-president-equatorial-guinea-

17

agrees-relinquish-more-30-million-assets-purchased) ......................................... 1

18

**Constitutional Provisions**

19

U.S. Const. Art. III, §2 .................................................................................................. 9

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This is not a lawsuit filed by an injured party.  It is an artifice to reclaim forfeited money. Teodoro Nguema Obiang Mangue ("Obiang")—the Vice President of Equatorial Guinea and sole member of Plaintiff Sweetwater Malibu CA LLC ("Plaintiff")—seeks to use the federal courts to take back the proceeds he forfeited to the United States based on allegations that they were derived from "relentless embezzlement," "extortion," and "shameless loot[ing of] his government." [1]  According to the United States, Obiang purchased a multimillion-dollar beachfront estate in Malibu (the "Sweetwater Property"), as part of "a corruption-fueled spending spree in the United States."[2]  As part of an agreement with the United States to resolve the forfeiture actions, Obiang and Sweetwater Malibu LLC (Plaintiff's predecessor in interest) reached a settlement with the Department of Justice ("DOJ"), agreeing to sell the Sweetwater Property and to give up *all interest* in the property and *any proceeds* from its sale.  Obiang, through a newly created Plaintiff entity, now seeks to circumvent the terms of that deal by using this litigation to cudgel Defendants into a settlement.

The Complaint alleges that Defendants damaged Plaintiff by selling the property below its fair market price and profiting from its subsequent sale.  These claims lack any factual basis.  The Sweetwater Property had fallen into a state of disrepair, but Defendants—based on their market leading expertise in high-end real estate and deep connections to potential buyers—were able to generate five offers for the Property.  Defendants negotiated to obtain the best offer and Plaintiff then ranked the offers in his order of preference.  After the first buyer failed to perform, Defendants sold the Sweetwater Property for more than its independently appraised value to

---

[1] Second Vice President of Equatorial Guinea Agrees to Relinquish More Than $30 Million of Assets Purchased with Corruption Proceeds, United States Department of Justice, (October 10, 2014) (https://www.justice.gov/opa/pr/second-vice-president-equatorial-guinea-agrees-relinquish-more-30-million-assets-purchased).

[2] *Id.*

1   Plaintiff's second choice.  Defendants worked closely with Plaintiff and DOJ throughout the
2   transaction.

3   But more importantly, the Complaint is incurably defective because Obiang and the
4   entities related to him (including Plaintiff) were required under the settlement agreement with
5   DOJ to give up their claim to any proceeds from the Sweetwater Property's sale.  The Complaint
6   alleges various legal claims, but each is necessarily dependent upon the disposition of the
7   Sweetwater Property, and the proceeds from its sale (the "Sale Proceeds").  Because Plaintiff
8   lacks any interest in the Sweetwater Property or the Sale Proceeds, Plaintiff simply cannot
9   establish any injury—the most basic, "irreducible" minimum a plaintiff must satisfy to invoke the
10   jurisdiction of this Court.  Without an injury, Plaintiff lacks standing to assert these or any claims.
11   Because standing is a threshold question for entry into federal court, this Court should dismiss
12   Plaintiff's complaint with prejudice.

13   **II.**   **FACTUAL BACKGROUND[3]**

14   **A.**   **The Property and the Settlement Agreement**

15   The Sweetwater Property is an oceanfront estate located at 3620 Sweetwater Mesa Road
16   in Malibu, California.  When he bought the Sweetwater Property, Obiang, the son of the president
17   of Equatorial Guinea ("E.G."), was E.G.'s second vice president for national defense and state
18   security.  He is now E.G.'s vice president.  According to DOJ, Obiang looted his country by
19   "accepting bribes and extorting forestry companies working in E.G." and "misappropriat[ing],
20   embezzl[ing], and st[ealing] hundreds of millions of dollars of E.G. public funds."  *United States*
21   *v. One Michael Jackson Signed Thriller Jacket & other Michael Jackson Memorabilia, et al.,* No.
22   CV 13-9169 (C.D. Cal. Dec. 12, 2013) ("Thriller Jacket Case").[4]  With those proceeds of

23   _____

24   [3] Defendants provide this factual background for context.  However, the bases for this Motion are
    limited to the documents currently before this Court and the court records addressed in
25   Defendants' concurrently-filed Request for Judicial Notice.

26   [4] In ruling on a motion to dismiss, Courts may consider additional evidence upon which the
    complaint "'necessarily relies' if: (1) the complaint refers to the document; (2) the document is
27   central to the plaintiff's claim; and (3) no party questions the authenticity of the document."
    *United States v. Corinthian Colls.,* 655 F.3d 984, 999 (9th Cir. 2011).  All three criteria are met
28   here with regard to the complaints in the Thriller Jacket Case, the Glove Case (defined *infra*), and

corruption, Obiang bought the Sweetwater Property and other luxury items including a 2011 Ferrari 599 GTO and several pieces of Michael Jackson memorabilia, such as a crystal-covered "Bad" tour glove, life-size statutes, and a signed "Thriller" jacket.  *Id.* ¶¶ 5, 8, 9, Ex. A-1.  Obiang controlled these and other criminally derived assets through a "web of shell companies," including Sweetwater Malibu, LLC, which held the Sweetwater Property for Obiang's benefit.  *Id.* ¶¶ 1, 5.[5]

As part of DOJ's Kleptocracy Asset Recovery Initiative, a team of prosecutors in the Criminal Division's Asset Forfeiture and Money Laundering Section brought multiple forfeiture actions against Obiang and his shell companies to recover the looted funds and the assets Obiang purchased with them.  *See* Thriller Jacket Case, Dkt. 1 (Complaint); *United States v. One White Crystal Covered "Bad" Tour Glove et al.,* No. 2:11-cv-03582, Dkt. 50 (Second Amended Complaint) (C.D. Cal. June 11, 2012) ("Glove Case")[6]; *United States v. One Gulfstream G-V Jet Aircraft et al.,* No. 1:11-cv-1874, Dkt. 24 (First Amended Complaint) (D.D.C. June 17, 2013) ("Gulfstream Case"), Dkt. 24 (First Amended Complaint).[7]  Plaintiff and Obiang filed a verified claim to the Sweetwater Property on January 23, 2014.  *See* Weisberg Decl. Ex. 2 at p.3 (Settlement Agreement).

the Gulfstream Case (defined *infra*), as well as the Settlement Agreement (defined *infra*).  Plaintiff's Complaint refers to the Settlement Agreement (which incorporates and discusses the complaints in the Thriller Jacket Case, the Glove Case, and the Gulfstream Case).  *See, e.g.,* Dkt. 1 ¶¶ 1-4, 14-16, 19.  The Settlement Agreement is also the first cause of action and central to Plaintiff's allegations.  *Se*e, e.g., *id.* ¶ 19 ("In 2015, pursuant to the Settlement Agreement and Order, Defendants entered into an exclusive listing agreement [ ] with Sweetwater . . . .").  Furthermore, as explained in Defendants' concurrently-filed Request for Judicial Notice, these documents are the appropriate subjects of judicial notice.  A true and correct copy of the Complaint in the Thriller Jacket Case is attached as Exhibit 1 to the concurrently-filed Declaration of Andrew J. Weisberg ("Weisberg Declaration").

[5] The plaintiff in this case, Sweetwater Malibu CA, LLC, is the successor-in-interest to one of Obiang's "shell companies"—Sweetwater Malibu LLC.  *See* Dkt. 1 ¶ 10.  For clarity, both Sweetwater Malibu, LLC and Sweetwater Malibu CA, LLC shall hereinafter be collectively referred to as "Plaintiff."

[6] A copy of the Second Amended Complaint in the Glove Case is attached as Exhibit 3 to the concurrently-filed Weisberg Declaration.

[7] A copy of the First Amended Complaint in the Gulfstream Case attached as Exhibit 4 to the concurrently-filed Weisberg Declaration.

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

On or around October 10, 2014, Obiang, Plaintiff, and another of Obiang's alleged shell companies, Ebony Shine International, Ltd., entered into an agreement with the United States (the "Settlement Agreement") to settle the Thriller Jacket Case, the Glove Case, and the Gulfstream Case. *Id.* Obiang and Plaintiff agreed to sell the Sweetwater Property and forfeit their interest in the property and any Sale Proceeds. *Id.* ¶¶ 5, 40 ("Sweetwater Malibu, LLC and [Obiang] understand and agree, individually and jointly, that they will not seek, through any court proceeding or other process, the return of the [Sweetwater Property] or any proceeds as a result of the liquidation of the [Sweetwater Property] except as otherwise provided herein."). Obiang and Plaintiff also waived all claims against the United States and its agents, *id.* ¶ 42, and agreed to pay for the Sweetwater Property's insurance, repairs, and maintenance until it was sold. *Id.* ¶¶ 15, 16.

The Settlement Agreement established a three-tier structure for distributing the Sale Proceeds. First, the Sale Proceeds would pay fees and costs in connection with the Sweetwater Property's repair, maintenance, and sale. Weisberg Decl. Ex. 2 ¶ 27(A). Next, the United States would receive $10.3 million of the Sale Proceeds. *Id.* ¶ 27(B). Finally, all remaining Sale Proceeds would be placed in an escrow account and ultimately donated to a charity helping support the people of E.G. *Id.* ¶ 27(C). At no point may the charity use any of the Sale Proceeds to benefit Obiang, Plaintiff, or any related persons or entities. *See id.* ¶ 31.[8]

The Settlement Agreement required Plaintiff to sell the Sweetwater Property for "fair market value," *id.* ¶¶ 6, 11, as assessed by an independent appraiser jointly selected by Obiang

---

[8] Any funds given to the charity may not be used to "make any payments or provide any form of consideration to . . . (a) the Government of the Republic of Equatorial Guinea; (b) individuals employed by the Government of the Republic of Equatorial Guinea, including [Obiang] ("E.G. Public Officials"); (c) the immediate family members of E.G. Public Officials; (d) the personal or business associates of E.G. Public Officials; (e) legal entities or companies owned or controlled by E.G. Public Officials; (f) legal entities or companies owned or controlled by the immediate family members of E.G. Public Officials; (g) legal entities or companies owned or controlled by the personal or business associates of E.G. Public Officials; ([h]) legal entities or companies owned or controlled by legal entities or companies owned or controlled by the Government of Equatorial Guinea; or ([i]) any political organizations, political bodies, or other groups in opposition to the Government of the Republic of Equatorial Guinea." Weisberg Decl. Ex. 2 ¶ 31.

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

and the United States (the "Appraiser"). *Id.* ¶ 9.  The retained Appraiser valued the property at $32 million.

The Settlement Agreement also required that Obiang and the United States "jointly select" a licensed California real estate agent ("Licensed Agent") to sell the Sweetwater Property. *Id.* ¶ 8.  Defendants are some of the few professionals capable of selling residential real estate like the Sweetwater Property, which required a nuanced understanding of high-end luxury real estate as well as an extensive contact list of buyers capable of closing such a high-dollar transaction. Obiang's representatives first approached Defendants to serve as the Sweetwater Property's Licensed Agent in March 2015.  Defendants were formally retained, with DOJ approval, as the Licensed Agent in August 2015.  *See* Dkt. 1 ¶ 19.

### B. <u>The Property is Sold, DOJ Requires it to Pay a $1 million Repair Credit, and Plaintiff Sues Defendants</u>

On October 15, 2014, this Court ordered that the Sweetwater Property be liquidated in accordance with the Settlement Agreement, ordered Obiang and Sweetwater to act in accordance with the Settlement Agreement and "refrain from taking any action that is inconsistent" with it, and retained jurisdiction to "take additional action and enter further orders as necessary" to implement and enforce its Order and the Settlement Agreement.  <u>Thriller Jacket</u> Case Dkt. 46 (Order Enforcing Settlement Agreement) ¶¶ 3, 5, 8.[9]

Because Defendants' Residential Listing Agreement with Plaintiff ("Listing Agreement") required that Defendants "cooperate with all the terms set forth in the [Settlement Agreement]" and adhere to the Settlement Agreement even if it conflicted with the Listing Agreement, Defendants sought (and relied upon) approvals from both Plaintiff and DOJ throughout the sale process.  Defendants were obligated to comply with the Settlement Agreement, (Weisberg Decl. Ex. 2 ¶ 8), including "work[ing] cooperatively" with DOJ and "reporting regularly to [DOJ] and providing all requested information promptly to the [DOJ] relating to the [Sweetwater Property]

---

[9] A copy of the Court's Enforcement Order in the <u>Thriller Jacket</u> Case is attached as Exhibit 5 to the concurrently-filed Weisberg Declaration.

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

1  and its sale." *Id.*  Defendants did so, acting in the best interests of Obiang, Sweetwater, and DOJ

2  while consummating a difficult sale.

3        Upon visiting the Sweetwater Property, Defendants discovered its condition significantly

4  deteriorated since it was appraised.  Despite his obligation to maintain the Sweetwater Property,

5  Obiang had apparently not lived in the Sweetwater Property for many years, and it had been

6  vandalized and poorly maintained in his absence.  Defendants also learned that the utility

7  company cut off power to the Sweetwater Property because of $33,000 in unpaid bills, making it

8  even harder to show the property to prospective buyers.  Despite these challenges, however,

9  Defendants were able to bring 30 potential buyers to the Sweetwater Property and received five

10 offers ranging from $32,000,000 to $33,500,000.  One of the offers came from Mauricio

11 Oberfeld.  In July 2015, defendant Mauricio Umansky ("Umansky") had emailed Plaintiff

12 advising that he would like to show the property to Oberfeld, whom he identified as "[a] great

13 friend and client of mine."

14       Defendants, at Plaintiff's direction, sent all five bidders a counter-offer of $33,500,000.

15 Defendants communicated this information to DOJ.  After Defendants presented the offers,

16 Plaintiff ranked the offers in his order of preference.  Plaintiff's first choice was an offer from a

17 London developer.  Oberfeld was Plaintiff's second choice.  Defendants sent each potential

18 buyer's background information to DOJ for review and consideration of any issues of concern.

19       The London developer ultimately determined he would not pursue the deal and withdrew.

20 Plaintiff then instructed Defendants to move forward with Plaintiff's second choice, Oberfeld.

21 Escrow between Plaintiff and Oberfeld opened in January 2016.  In April 2016, Oberfeld

22 demanded a $1 million credit for repairs to the Sweetwater Property, which remained in a state of

23 disrepair despite Obiang's and Plaintiff's repair and maintenance obligations under the Settlement

24 Agreement.  Dkt. 1 ¶ 29.  Plaintiff and DOJ agreed to give Oberfeld the credit, which was far less

25 than the actual costs of fixing the run-down Sweetwater Property.  Once Plaintiff and DOJ

26 granted the $1 million repair credit, Oberfeld removed contingencies to close the sale.[10]  Escrow

27

28
[10] Prior to the close of the transaction, Oberfeld assigned his interest in the purchase to 3620
Sweetwater Mesa, LLC (the "Buyer").

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

1   closed in late June 2016, with the Sweetwater Property selling to the Buyer for $32.5 million—

2   $500,000 more than the fair market value determined by the independent appraiser.[11]  Despite the

3   fact that the Settlement Agreement provided that Plaintiff was to be reimbursed for repair and

4   maintenance costs, *see* Weisberg Decl. Ex. 2 ¶¶ 16, 27(A)(Settlement Agreement), the United

5   States then took the position that Sweetwater was liable for the repair credit, Dkt. 1 ¶ 29.

6   Defendants received consent from both the DOJ and Plaintiff to represent Oberfeld and the Buyer

7   in the transaction and to invest with him in the purchase of the Sweetwater Property.

8        Plaintiff filed this action in March 2019, despite the fact that the Sweetwater Property sold

9   for more than its appraised value and that even if it *had* sold for more, Plaintiff and Obiang could

10  not have received any of the additional Sale Proceeds.  By suing Defendants and making

11  unfounded and baseless allegations, Plaintiff repeats a strategy Obiang has used before:

12  unlawfully enriching himself by using shell companies to take money from innocent parties.

13  However, unlike his ability to operate with impunity in E.G., Obiang must establish standing to

14  invoke the jurisdiction of this Court before he can seek to use its authority to compel defendants

15  to pay him.  This is a threshold requirement he cannot satisfy.

16  **III.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE
17         UNDER FED. R. CIV. P. 12(B)(1) OR 12(B)(6)**

18       Plaintiff has no standing to assert any claims in this Court: it suffered no injury, lacks any

19  interest in the Sweetwater Property, and can seek no damages.  The uncontested terms of the

20  Settlement Agreement show that Plaintiff forfeited its interest in the Sweetwater Property and the

21  Sale Proceeds, so Plaintiff can recover nothing here.  Plaintiff also pledged not to sue Defendants

22  and waived any claims it may have had against them.  Because additional allegations cannot cure

23  these deficiencies in Plaintiff's unsalvageable Complaint, the Complaint must be dismissed with

24  prejudice.

25

26

---

27  [11] As discussed *supra*, the Buyer received a negotiated $1 million repair credit against this sale

28  price.

1   Plaintiff's Complaint fails to establish Article III standing and should be dismissed for

2   lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Chapman v. Pismo Food Store,*

3   710 F. App'x 769, 770 (9th Cir. 2018) (citing *Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1174 (9th

4   Cir. 2004) (holding that where a plaintiff lacks Article III standing, an Article III federal court

5   lacks subject matter jurisdiction to hear the case and must dismiss the suit under Rule 12(b)(1))).

6   Because Plaintiff's allegations cannot establish a right to any damages, its claims are also subject

7   to dismissal under Fed. R. Civ. P. 12(b)(6). *Schmier v. U.S. Court of Appeals for Ninth Cir.*, 279

8   F.3d 817, 823 (9th Cir. 2002) (failure to plead a concrete injury-in-fact can provide "the proper

9   basis for the grant of a motion to dismiss" pursuant to Fed. R. Civ. P. 12(b)(6)).

10   Generally, on a 12(b)(1) motion, a court need not defer to a plaintiff's factual allegations.

11   *Young v. Crofts,* 64 F. App'x 24, 25 (9th Cir. 2003).  But where, as here, "a 12(b)[1] motion to

12   dismiss is based on lack of standing, the reviewing court must defer to the plaintiff's factual

13   allegations, and must 'presume that general allegations embrace those specific facts that are

14   necessary to support the claim.'" *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561

15   (1992)).  Accordingly, "a 12(b)(1) motion to dismiss for lack of standing can only succeed if the

16   plaintiff has failed to make "general factual allegations of injury resulting from the defendant's

17   conduct." *Id.*

18   Similarly, when considering a 12(b)(6) motion, "all allegations of material fact are

19   accepted as true and should be construed in the light most favorable to the plaintiff." *Resnick v.*

20   *Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  In *Ashcroft v. Iqbal*, the Supreme Court explained that

21   a court should first "identify[ ] pleadings that, because they are no more than conclusions, are not

22   entitled to the assumption of truth." 556 U.S. 662, 679 (2009).  Next, the court should identify the

23   complaint's "well-pleaded factual allegations, . . . assume their veracity and then determine

24   whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Moss v. U.S. Secret*

25   *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss,

26   the non-conclusory factual content, and reasonable inferences from that content, must be

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

plausibly suggestive of a claim entitling the plaintiff to relief." (internal quotation marks omitted)).

Notably, however, conclusory claims of injury are not assumed true on a motion to dismiss because they are mere legal conclusions, not factual allegations. *Spieron, Inc. v. Americanized Benefit Consultants, Ltd.*, 2018 WL 6844719, at *3 (C.D. Cal. Oct. 22, 2018) (citing *Iqbal*, 556 U.S. at 678) ("Plaintiff merely alleges it 'was and continues to be damaged in an amount according to proof.' This is a legal conclusion that the Court is not required to assume true.")

Even when accepted as true, the factual allegations in Plaintiff's Complaint do not establish standing and cannot plausibly entitle Plaintiff to relief. The Court should thus dismiss the Complaint in its entirety under Fed. R. Civ. P. 12(b)(1), or in the alternative under Fed. R. Civ. P. 12(b)(6). Because the deficiencies in Plaintiff's Complaint cannot be cured through amendment, the Complaint must be dismissed with prejudice. *Yagman v. Garcetti,* 852 F.3d 859, 867 (9th Cir. 2017) (quoting *Ebner v. Fresh, Inc.,* 838 F.3d 958, 963 (9th Cir. 2016)) (district court need not grant leave to amend if it "determines that the pleading could not possibly be cured by the allegation of other facts").

### A.    Plaintiff Has No Article III Standing

Federal courts' jurisdiction only extends to actual "cases" and "controversies." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting U.S. Const. Art. III, §2). Accordingly, any plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum of standing" by demonstrating "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan,* 504 U.S. at 560-61).

An injury-in-fact, in turn, must be "concrete and particularized"—it must "affect the plaintiff in a personal and individual way" (particularization), and it must "actually exist" (concreteness). *Id.* at 1548; *see also Lujan,* 504 U.S. at 560 n.1, 563 (injury in fact "requires that the party seeking review be himself among the injured"). Because it is "settled" that the

1   legislature cannot erase Article III's standing requirements by "statutorily granting the right to sue

2   to a plaintiff who would not otherwise have standing," *Spokeo,* 136 S. Ct. at 1547-48, mere

3   violations of statutory rights, such as brokers' obligations under California law, (*see, e.g.,* Dkt. 1 ¶

4   41), cannot establish Article III standing—a concrete and particularized injury must still be

5   shown. *See id.* at 1548. Furthermore, any purported injury must have been incurred by Plaintiff,

6   as a plaintiff only has standing "to seek redress for injuries done to him, [and] may not seek

7   redress for injuries done to others." *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166 (1972);

8   *Warth v. Seldin,* 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal

9   rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

10  parties.").

11      Here, Plaintiff lacks standing to bring any of its claims because it has suffered no injury-

12  in-fact. Plaintiff alleges violations of Defendants' contractual, fiduciary, and statutory duties, but

13  it fails to allege (and, indeed, cannot allege) that any of those purported breaches caused it to

14  suffer a concrete and particularized injury. *See, e.g.,* Dkt. 1 ¶¶ 37, 44, 51, 55, 61, 67, 72 (alleging,

15  without further specificity, that because of Defendants' purported "breaches" Plaintiff has been

16  "damaged in an amount to be proven at trial"). As discussed below, Plaintiff cannot claim an

17  injury-in-fact due to Defendants' alleged actions because Plaintiff (a) forfeited any particularized

18  interest it had in the Sweetwater Property and the Sale Proceeds; and (b) it suffered no damages,

19  and therefore suffered no concrete injury.

20              1.    **Plaintiff forfeited its interest in the Sweetwater Property and the Sale**
                      **Proceeds**
21

22      Plaintiff seeks recovery of damages stemming from sale of property it forfeited.

23  However, as the case law makes clear, forfeiture is the relinquishment of *all* interest in property.

24  *See Hobson v. Wells Fargo Bank, NA,* 576 F. App'x 678, 679 (9th Cir 2014) (citing *Lujan,* 504

25  U.S. at 560-61) (finding that after foreclosure sale, plaintiff lacked standing to challenge bank's

26  assignment of real property "because she no longer had an interest in the property"").

27  Accordingly, the moment a forfeiture has occurred, the former owner of that property does not

28

have standing to sue for its recovery or any damages related to it.  *See, e.g., United States v. $14,344.50 in U.S. Currency*, 49 F. App'x 207, 208 (10th Cir. 2002) (claimant lacked standing to contest forfeiture because, as part of plea agreement, he agreed to forfeit his interest in seized property, and thus lacked a sufficient interest in it); *United States v. Le*, 173 F.3d 1258, 1277–78 (10th Cir. 1999) (same).

In *United States v. Stokes,* for example, defendant Stokes was indicted on drug charges, and as part of a plea deal agreed to "forfeit[ ]" his interest the property seized during his arrest, including $15,000 in cash, a Buick automobile, and two pieces of real property.  191 F. App'x 441, 442-43 (7th Cir. 2006).  When Stokes later filed a motion seeking the return of the $15,000, *id.* at 443, the Seventh Circuit found that Stokes "lacked Article III standing to contest the forfeiture" because he "abandoned any interests in the property."  *Id.* at 444.

Similarly, in *United States v. $8,720 in U.S. Currency* ("*$8,720 in U.S. Currency*"), 264 F.3d 1140, 1140 (5th Cir. 2001), the FBI seized over $30,000 in cash from the would-be claimant, Solis, during a search.  *Id.*  Solis later pled guilty to drug charges, and as part of his plea agreement agreed to forfeit "any interest he may have [had] in any drug-related or money laundering-related asset."  *Id.*  However, when the United States initiated forfeiture proceedings against the $30,000, Solis tried to contest them, claiming that the $30,000 was not actually forfeited because it was not drug-related.  *Id.*  The Fifth Circuit disagreed, noting that Solis had not produced sufficient evidence to establish an interest in the $30,000 (and therefore to establish standing) because despite his current claims that the $30,000 had not been forfeited, he had acknowledged its forfeiture on three prior occasions (during his re-arraignment hearing, in a letter, and in an appellate brief in a related case).  *Id.* (citing *United States v. $38,570 U.S. Currency* ("*$38,570 U.S. Currency*"), 950 F.2d 1108, 1112 n.5 (5th Cir. 1992) ("a bare assertion of ownership in the *res,* without more, is inadequate to prove an ownership interest sufficient to establish standing")).

Moreover, forfeiture agreements strip a would-be plaintiff of its interest in the property at issue as soon as that plaintiff receives the benefit of its forfeiture bargain (*i.e.,* upon execution).

- 11 -

In *United States v. Grover,* for example, defendant Grover pled guilty to a variety of drug-related crimes, and as part of his plea agreement entered into a "Forfeiture Agreement" under which he agreed to sell a residence in Aspen, Colorado and turn over a portion of the proceeds to the United States, which forfeiture Grover agreed not to contest.  119 F.3d 850, 851 (10th Cir. 1997).  In exchange, the government agreed not to seek forfeiture of Grover's business and another residence in Honolulu, Hawaii.  *Id.*  When the government failed to initiate a civil forfeiture against the proceeds from the sale of Grover's Aspen home, Grover filed a motion for return of those proceeds under Fed. R. Crim. P. 41(e), arguing that the government was no longer entitled to keep the money because the five-year statute of limitations for the civil forfeiture had run.  *Id.*  The Tenth Circuit disagreed, finding that regardless of the government's failure to act, Grover had "already received the full benefit of his bargain" under the Forfeiture Agreement, thus "relinquish[ing] any possessory claim he had to the property" and rendering him unable to contest forfeiture proceedings.  *Id.* at 852.[12]

In this case, like in *Stokes, $8,720 in U.S. Currency,* and *Grover,* through the Settlement Agreement Plaintiff forfeited its right to the Sweetwater Property and the Sale Proceeds, and agreed not to seek their return (except to the limited extent that it was entitled to reimbursement for costs).  Weisberg Decl. Ex. 2 ¶ 40.  In exchange, the government agreed not to seek forfeiture of Obiang's other assets (including those held by his shell companies like Plaintiff).  *See, e.g., id.* ¶ 36 (agreeing that DOJ will cease its efforts to seize Obiang's Gulfstream jet).  Accordingly, Plaintiff received the benefit of its bargain as soon as the Settlement Agreement was approved, and immediately forfeited all rights in the Sweetwater Property and Sale Proceeds at that time. *Grover*, 119 F.3d at 852.  Accordingly, Plaintiff has no remaining interest in, and therefore no standing to pursue, claims against Defendants regarding the Sweetwater Property and the Sale Proceeds.  *See id.*

Plaintiff cannot avoid the effects of this Settlement Agreement by simply claiming to

---

[12] Although the *Grover* opinion does not explicitly state that Grover lacked "standing," it conducts a *de facto* standing analysis and is considered a "lack of standing" case.  *See, e.g., Stokes,* 191 F. App'x at 444 (citing *Grover,* 119 F.3d at 852).

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

retain interests in the Sweetwater Property and Sale Proceeds that it has plainly forfeited.  *See*

*$8,720 in U.S. Currency*, 264 F.3d at 1140 (citing *$38,570 U.S. Currency*, 950 F.2d at 1112 n.5

("a bare assertion of ownership in the res, without more, is inadequate to prove an ownership

interest sufficient to establish standing")).  Nor can he attempt to recover these funds from a third

party because the lack of standing is based on the lack of an interest in the underlying asset, not

on the identity of the defendant.  Accordingly, like in *Stokes, $8,720 in U.S. Currency,* and

*Grover,* by forfeiting its interest in the Sweetwater Property and Sale Proceeds pursuant to the

Settlement Agreement, Plaintiff lost its particularized interest in the Sweetwater Property and its

sale, and therefore lacks standing to bring any of the causes of action stated in its Complaint, all

of which pertain to the disposition of the Sweetwater Property.

2. **Plaintiff has not suffered any injury in fact because it has no damages**

To have standing, an injury-in-fact must "actually exist" (concreteness).  *Spokeo, Inc.,* 136

S. Ct. at 1548.  When a plaintiff fails to plead a concrete injury-in-fact, the case must be

dismissed under Fed. R. Civ. P. 12(b)(1) or 12(b)(6).  *See Cetacean Cmty.,* 386 F.3d at 1174

(motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1)); *see also Schmier,* 279

F.3d at 823 (motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(6)).  Here,

Plaintiff's Complaint must be dismissed in its entirety because it fails to allege a concrete injury

attributable to Defendants' alleged actions.

The crux of Plaintiff's purported injury is its claim that but for Defendants' alleged

actions, the Sweetwater Property could have "sold for millions of dollars more than the sale

price." Dkt. 1. ¶ 35.  All of Plaintiff's causes of action relate to this central claim.  Its first cause

of action, for "Breach of the Settlement Agreement and Order," claims that such breach occurred

because "Defendants knew at the time of the sale of the Property to Oberfeld that it . . . could be

sold for millions of dollars more than the sale price" and failed to inform Plaintiff and DOJ.  *Id.*

¶¶ 35, 36).  Its second cause of action, for "Breach of Fiduciary Duties," claims that "[i]f

Defendants had not breached their fiduciary duties, Sweetwater . . . would have sold the property

to another buyer for millions of dollars more," and would not have agreed to effectively further

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

reduce the sale price by granting a repair credit.  *Id.* ¶ 43.  Plaintiff's third cause of action, for

violations of Defendants' statutory duties, claims that but for Defendants' purported violations of

those duties Sweetwater would not have agreed to the repair credit and "would not have entered

into the purchase agreement with Oberfeld . . . and would have sold the Property to another buyer

for millions of dollars more than Oberfeld [offered]."  *Id.* ¶ 50.  Plaintiff's fourth cause of action,

for breach of the Listing Agreement, claims that Defendants breached that Agreement by, *inter*

*alia,* failing to disclose "multiple offers for the Property that exceeded the price offered by

Oberfeld," *id.* ¶ 54, and Plaintiff's fifth cause of action claims that Defendants committed

intentional fraud by making false statements to Sweetwater "with the intent to induce [it] to

proceed with and close the sale of the Property to Oberfeld at the price he offered along with a $1

million repair credit."  *Id.* ¶ 59.  Plaintiff's sixth and seventh causes of action, for negligent

misrepresentation and negligence, claim that Defendants' actions caused Plaintiff to agree to the

repair credit and sell the Sweetwater Property to Oberfeld.  *See id.* ¶¶ 66, 67, 71, 72.

 Ultimately, however, all of these causes of action fail to (and cannot) allege how

Defendants' purported failure to sell the Sweetwater Property for maximum value actually injured

Plaintiff.  Instead, for each cause of action, Plaintiff makes the same conclusory claim—that

because the Sweetwater Property sold for less than it should have, Plaintiff was "damaged in an

amount to be proven at trial."  Dkt. 1 ¶¶ 37, 44, 51, 55, 61, 67, 72 (alleging, without further

specificity, that because of Defendants' purported "breaches" Plaintiff has been "damaged in an

amount to be proven at trial").  Because this is a mere legal conclusion, this Court need not accept

it as true for purposes of this Motion.  *See Spieron, Inc.,* 2018 WL 6844719, at *3 (citing *Iqbal,*

556 U.S. at 678) ("Plaintiff merely alleges it 'was and continues to be damaged in an amount

according to proof.'  This is a legal conclusion that the Court is not required to assume true.")

(internal citations omitted).  In addition, Plaintiff received the benefit of its bargain under the

Settlement Agreement—DOJ agreed to dismiss the <u>Thriller Jacket</u>, <u>Glove</u>, and <u>Gulfstream</u> Cases

while allowing Obiang to retain some of his property, such as a private jet.  Weisberg Decl. Ex. 2

¶¶ 35, 44; *see Chaset v. Fleer/Skybox Int'l., LP,* 300 F.3d 1083, 1086 (9th Cir. 2002) (quoting

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

*Dumas v. Major League Baseball Props., Inc.,* 104 F. Supp. 2d 1220, 1223 (S.D. Cal. 2000)) (affirming dismissal with prejudice for failure to establish cognizable injury under RICO, because "plaintiffs 'struck a bargain with Defendants and received the benefit of their bargain'").

Even accepting *arguendo* that the Sweetwater Property could have sold for more than the sale price, the resulting shortfall could not have injured Plaintiff because Plaintiff has no interest in the Sale Proceeds. Weisberg Decl. Ex. 2 ¶ 40. Pursuant to the Settlement Agreement, any additional Sale Proceeds from the Sweetwater Property would have gone to the charity, *id.* ¶ 27(C), not Plaintiff. Even after receiving those extra Sale Proceeds (if any), the charity could not have used those funds to benefit Obiang, Plaintiff, or any persons and entities related thereto. *See id.* ¶ 31.

For the same reasons, the $1 million repair credit to the buyer did not cause Plaintiff injury. The credit reduced the sales price by $1 million and Plaintiff had relinquished any interest in the Sale Proceeds. Indeed, Plaintiff admits that it was the *United States*, not Defendants, who "has taken the position that Sweetwater itself is liable for this $1 million." See Dkt. 1 ¶ 29. To the extent Plaintiffs seek to challenge the United States' "position" that Sweetwater was responsible for the $1 million, that is a dispute between Sweetwater and the United States, not one with Defendants, and is insufficient to establish standing. *See* Weisberg Decl. Ex. 2 ¶¶ 16, 27(A)(Settlement Agreement) (providing that Sweetwater was entitled to reimbursement from the sale proceeds for ordinary repair and maintenance costs); *Lujan,* 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)) ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'"); *Prescott v. Cnty. of El Dorado*, 298 F.3d 844 (9th Cir. 2002) (affirming plaintiffs' lack of standing because injury "cannot be the result of the 'independent action of some third party not before the court'").

Accordingly, because it has not suffered damages, Plaintiff lacks an injury-in-fact therefore lacks standing to bring the claims in its Complaint. *See Spieron, Inc.,* 2018 WL

6844719, at *3 ("According to Defendants, Plaintiff fails to allege it suffered some financial loss or other damages, causing their professional negligence and breach of fiduciary duty claims to fail under Rule 12(b)(6).  The Court agrees.").

**B.     Plaintiff is Bound by a Covenant Not to Sue Defendants, and Waived its Claims Against Them**

In the Settlement Agreement, Plaintiff agreed that it will "**not seek, through any court proceeding or other process, the return of the [Sweetwater Property] or any proceeds as a result of the liquidation of the [Sweetwater Property] except as otherwise provided herein.**" Weisberg Decl. Ex. 2 ¶ 40 (emphasis added).  Plaintiff also waived all claims against third parties, like Defendants, "agree[ing] to forever discharge and hold harmless the United States, and any and all officers, agents, representatives, attorneys, and employees of same, including all federal, state, and local enforcement officers, from all claims, liabilities, obligations, appeals, or demands, including attorneys fees, in connection with or arising from the <u>Thriller Jacket</u> Case, the <u>Glove</u> Case and the <u>Gulfstream</u> Case or any allegations contained therein."  Weisberg Decl. Ex. 2 ¶ 42.  But Plaintiff's Complaint is both "in connection with" and "arise[s] from" the <u>Thriller Jacket</u> Case—it pertains to the disposition of property at issue in the <u>Thriller Jacket</u> Case (*i.e.,* the Sweetwater Property), and its claims arise from Defendants' involvement in the disposition that property pursuant to the <u>Thriller Jacket</u> Case's Settlement Agreement.  Accordingly, Plaintiff's Complaint is a direct breach of its aforementioned covenant not to sue, as well as its waiver of claims in connection with or arising from the <u>Thriller Jacket</u> Case.

As agents of the United States (*i.e.,* DOJ) and Plaintiff, and therefore third-party beneficiaries of the Settlement Agreement, Defendants are entitled to enforce Plaintiff's covenant not to sue and its waiver in seeking to have the Complaint dismissed.  *See Balsam v. Tucows, Inc*., 627 F.3d 1158, 1161 (9th Cir. 2010) (citing Cal. Civ. Code § 1559).  Although Defendants are not named in the Settlement Agreement (they were retained after the Agreement was signed), the Settlement Agreement contemplates their involvement in the sale by providing that a "Licensed Agent" (*i.e.,* Defendants) will be "jointly select[ed] by mutual agreement" to sell the Sweetwater

Property.  Weisberg Decl. Ex. 2 ¶ 8.  In addition, the Settlement Agreement's waiver provisions are broad, releasing each party's "agents" from all claims "in connection with or arising from the Thriller Jacket Case . . . ."  *Id.* ¶¶ 42, 43; *see S. Cal. Gas Co. v. Syntellect, Inc.,* 534 Fed. Appx. 637, 638 (9th Cir. 2013) (contractual phrases such as "arising out of," "arising from," and "resulting from" are read broadly by California courts); *Zhang v. Snyder, Inc.,* 2007 WL 2069915, at *6 (Cal. Ct. App. July 20, 2007) (phrase "in connection with or arising from" is "concededly broad") (internal quotation marks omitted); *see also Allen v. Erie R. Co.,* 2 F.2d 712, 713 (6th Cir. 1924) (release of claims "in connection with, or arising from" is "as broad [a release] as could be made.").

Finally, the Settlement Agreement established that Plaintiff's covenant not to sue extends to Defendants' commissions and other fees associated with the sale.  The Settlement Agreement pays Defendants' commissions and fees directly from the Sale Proceeds, (Weisberg Decl. Ex. 2 ¶ 27(A)), and Plaintiff agreed not to seek recovery of those Sale Proceeds "***through any court proceeding or other process***."  *Id.* ¶ 40 (emphasis added).  Indeed, the Settlement Agreement completely divorces Plaintiff from the Sweetwater Property and the Sale Proceeds—even the charity receiving the remaining Sale Proceeds is specifically prevented from using those Proceeds in any way that could benefit Plaintiff.  *Id.* ¶ 31.  Accordingly, allowing Plaintiff to proceed with this lawsuit would directly breach the Settlement Agreement, enabling Plaintiff to recover Sale Proceeds to which it has no right (and, indeed, in which it disclaimed any interest).

**C.**      <u>Plaintiff's Complaint Should be Dismissed With Prejudice</u>

A district court need not grant leave to amend if it "determines that the pleading could not possibly be cured by the allegation of other facts." *Yagman,* 852 F.3d at 867 (quoting *Ebner,* 838 F.3d at 963).  In this case, there is no way for Plaintiff to amend its Complaint to avoid the Settlement Agreement, which provides the grounds for dismissal.  Because of the Settlement Agreement, Plaintiff has no interest in the Sweetwater Property or its Sale Proceeds, no damages, and waived its right to sue Defendants with regard to the sale. Because there are no additional facts consistent with the Complaint that could, if alleged, cure these deficiencies in the

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-CV-01848-GW-SS

1  Complaint, *id.* at 995, dismissal with prejudice is required.

2  **IV.    CONCLUSION**

3          For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint

4  be dismissed in its entirety, with prejudice. [13]

5

6          Dated:  April 25, 2019

7                                                      DAVID L. KIRMAN
                                                       O'MELVENY & MYERS LLP
8

9                                                      By: _____
10                                                            David L. Kirman

11                                                     Attorneys for Defendants
                                                       Mauricio Umansky and UMRO Realty Corp., a
12                                                     California Corporation, d/b/a The Agency

13

14

15

16

17

18

19

20

21

22

23

24

25  [13] By making this Motion, Defendants are not waiving their right to compel arbitration and
reserve the right to do so in the event that the Court denies this Motion.  *See e.g., Echavarria v.*
26  *Adir Int'l., LLC*, 2016 WL 3397416, at *4 (C.D. Cal. Jun. 13, 2016) (permitting motion to compel
arbitration following motion to dismiss initial complaint); *St. Agnes Med. Ctr. v. PacifiCare of*
27  *Cal.*, 31 Cal. 4th 1187, 1203-04 (2003) ("[M]erely participating in litigation, by itself, does not
result in a waiver.").
28

MEMORANDUM OF POINTS AND
                                                     AUTHORITIES ISO MOTION TO DISMISS
                                                     2:19-CV-01848-GW-SS