DAVID L. KIRMAN (S.B. #235175)
dkirman@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, California  90067-6035
Telephone:     +1 310 553 6700
Facsimile:      +1 310 246 6779

ANDREW J. WEISBERG (S.B. # 307519)
aweisberg@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California  90071-2899
Telephone:     +1 213 430 6000
Facsimile:      +1 213 430 6407

Attorneys for Defendants
Mauricio Umansky and UMRO Realty Corp., a
California Corporation, d/b/a The Agency

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SWEETWATER MALIBU CA, LLC,<br><br>           Plaintiff,<br><br>    v.<br><br>MAURICIO UMANSKY; UMRO REALTY<br>CORP., a California Corporation, d/b/a The<br>Agency,<br><br>           Defendants. | Case No. 2:19-CV-01848-GW-SS<br><br>**DEFENDANTS MAURICIO UMANSKY AND UMRO REALTY CORP.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:  June 3, 2019<br>Time:        8:30 a.m.<br>Place:       Courtroom 9D, 9th Floor<br>Judge:     Hon. George H. Wu<br><br>Date of Filing:  Mar. 13, 2019<br>Trial Date:    None Set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    PLAINTIFF FAILS TO DISTINGUISH THE MANY CASES ESTABLISHING ITS LACK OF STANDING ........................................................................... 3

III.   PLAINTIFF FAILS TO ALLEGE A TANGIBLE FINANCIAL LOSS CAUSED BY DEFENDANTS ..................................................................................... 5

IV.    PLAINTIFF CANNOT SAVE THIS FLAWED CASE BY MAKING UP NEW LAWS OR SEEKING TO APPLY NARROW, INAPPLICABLE AUTHORITY ABOUT LIMITED THIRD-PARTY RELATIONSHIPS ................................... 7

    A.     The Court must reject Plaintiff's argument that it need not suffer damages .......... 7

    B.     Plaintiff suffered no "intangible injury" recognized in the law ........................... 10

    C.     Plaintiff does not come close to falling within a special relationship that would allow it to assert these claims as a third party ........................................... 11

    D.     The catch-all provision does not apply to this type of dispute and even if it did, Plaintiff cannot satisfy its elements ............................................................... 12

V.     THE COMPLAINT MUST BE DISMISSED BECAUSE EACH CLAIM REQUIRES DAMAGES ............................................................................. 14

VI.    PLAINTIFF WAIVED ITS CLAIMS ............................................................. 15

VII.   CONCLUSION ............................................................................................. 16

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir.2000) .......................................................................... 15

*Arachnid, Inc. v. Merit Indus., Inc.*,
939 F.2d 1574 (Fed. Cir. 1991) ....................................................................... 10

*Biomed Pharm., Inc. v. Oxford Health Plans (NY), Inc.*,
2011 WL 803097 (S.D.N.Y. Feb. 18, 2011) .................................................. 14

*DiCarlo v. St. Mary Hosp.*,
530 F.3d 255 (3d Cir. 2008) ............................................................................ 14

*Echavarria v. Adir Int'l., LLC*,
2016 WL 3397416 (C.D. Cal. Jun. 13, 2016) ................................................ 22

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........................................................................... 16

*Equatorial Guinea v. France: Preliminary Objections*,
2019 WL 1210207 (I.C.J. 2019) ..................................................................... 19

*Frank v. Gaos*,
139 S. Ct. 1041 (2019) ..................................................................................... 15

*Hobson v. Wells Fargo Bank, NA*,
576 F. App'x 678 (9th Cir 2014) ..................................................................... 10

*Jackson v. Wells Fargo*,
18 F. Supp. 3d 3 (D.D.C. 2014) ...................................................................... 10

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012) .............................................................................. 14

*Kilgore v. Wells Fargo Home Mortg.*,
2013 WL 71781 (E.D. Cal. Jan. 7, 2013) ....................................................... 10

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) .................................................................................. 18, 19

*Lance v. Coffman*,
549 U.S. 437 (2007) ......................................................................................... 17

*Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*,
973 F.2d 1311 (6th Cir. 1992) ......................................................................... 14

1

2

**TABLE OF AUTHORITIES**
*(continued)*

**Pages**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Little v. Shell Expl. & Prod. Co.*,
    690 F.3d 282 (5th Cir. 2012).......................................................................... 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 12, 13, 17

*McGlothlin v. Drake*,
    2012 WL 1768098 (E.D. Ark. May 16, 2012) ......................................... 10

*Mitchell v. Blue Cross Blue Shield of N. Dakota*,
    2018 WL 3463260 (D.N.D. July 18, 2018) ............................................. 17

*Moss v. Associated Press*,
    956 F. Supp. 891 (C.D. Cal. 1996)........................................................... 13

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .................................................................... 20

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
    781 F.3d 182 (5th Cir. 2015)......................................................... 13, 14, 17

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ....................................................... 15

*Pac. Sound Res. v. Burlington N. & Santa Fe Ry. Co.*,
    286 F. App'x 381 (9th Cir. 2008) ............................................................. 17

*Prescott v. County of El Dorado*,
    298 F.3d 844 (9th Cir. 2002) .................................................................... 12

*Prime Tek II, LLC, v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000)................................................................. 10

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018) ................................. 14, 16

*Rudnicki v. WPNA 1490 AM*,
    2009 WL 4800030 (N.D. Ill. Dec. 10, 2009) .......................................... 10

*Ruiz v. Gap, Inc.*,
    380 Fed. Appx. 689 (9th Cir.2010) ......................................................... 15

*S. Cal. Gas Co. v. Syntellect, Inc.*,
    534 F. App'x 637 (9th Cir. 2013) ............................................................. 22

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

1

**TABLE OF AUTHORITIES**
*(continued)*

2

**Pages**

3

4

*Sanner v. Bd. of Trade of City of Chi.*,
62 F.3d 918 (7th Cir. 1995) .................................................................. 13

5

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
6
770 F.3d 1282 (9th Cir. 2014) .............................................................. 14

7

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .......................................................... 7, 14, 16

8

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
9
554 U.S. 269 (2008) ............................................................................. 17

10

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*,
31 Cal. 4th 1187 (2003) ....................................................................... 22

11

12

*Svenson v. Google, Inc.*,
2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ................................... 16

13

*United States v. $14,344.50 in U.S. Currency*,
14
49 F. App'x 207 (10th Cir. 2002) ...................................................... 9, 18

15

*United States v. $8,720 in U.S. Currency*,
264 F.3d 1140 (5th Cir. 2001) ............................................................ 9, 18

16

17

*United States v. Grover*,
119 F. 3d 850 (10th Cir. 1997) .................................................... 9, 18, 21

18

*United States v. Stokes*,
19
191 F. App'x 441 (7th Cir. 2006) ..................................................... 9, 18

20

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ............................................................. 16

21

22

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) ............................................................................. 17

23

*Whitmore v. Arkansas*,
24
495 U.S. 149 (1990) ............................................................................. 13

25

*Zhang v. Snyder, Inc.*,
2007 WL 2069915 (Cal. Ct. App. July 20, 2007) ............................... 22

26

**Statutes**

27

29 U.S.C. § 1132(a)(1)(B) ............................................................................ 14

28

**TABLE OF AUTHORITIES**
*(continued)*

Pages

Cal. Civ. Code § 3360 ....................................................................................................... 15

**Other Authorities**

April 11, 2019 Letter to Chairwoman Waters RE: Corporate Transparency Act of
2019 from the Human Rights Watch, available at
(https://www.hrw.org/news/2019/04/11/letter-chairwoman-waters-and-
ranking-member-mchenry-re-corporate-transparency-act) ....................................... 19

Second Vice President of Equatorial Guinea Agrees to Relinquish More Than $30
Million of Assets Purchased with Corruption Proceeds, United States
Department of Justice, (October 10, 2014)
(https://www.justice.gov/opa/pr/second-vice-president-equatorial-guinea-
agrees-relinquish-more-30-million-assets-purchased) ............................................. 19

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 20

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

A single question resolves this attempt to recover forfeited and disclaimed funds: does the Plaintiff have any interest in the damages it seeks?  The answer: no.  Longstanding Article III jurisprudence requires plaintiff Sweetwater Malibu CA, LLC ("Plaintiff")[1] to establish, at an "irreducible minimum," three elements: an injury in fact that is concrete and particularized that actually impacts the *plaintiff*; that the injury is traceable to the challenged conduct of the defendant; and that the injury is likely to be redressed by a favorable judicial decision.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  Plaintiff fails to satisfy any of these core elements:

- **Injury in Fact**.  Plaintiff suffered no injury because it forfeited and disclaimed its interest in the Sweetwater Property[2] *and* the Sale Proceeds.  The Sweetwater Property, which sold for $32.5 million ($500,000 more than its appraised fair market value), could have sold for $40 million or $20 million and Plaintiff would have received the same amount: zero.

- **Traceable to Defendants**.  As Plaintiff's Opposition essentially concedes, the only *potential* damage suffered by Plaintiff is for repair costs—a damage that has nothing to do with Defendants.  The United States government has apparently told Plaintiff that it must pay repair costs despite a provision in the Settlement Agreement that provides the opposite.  Defendants had no role in that decision, and cannot be liable for the independent actions of the United States.  In addition, Plaintiff has not paid the repair costs, so the potential damage has not occurred and might never materialize.

---

[1] Plaintiff Sweetwater Malibu CA, LLC is allegedly the successor to Sweetwater Malibu, LLC, the shell company managed by Teodoro Nguema Obiang Mangue ("Obiang").  Obiang allegedly used the shell company to secretly purchase the Sweetwater Property.  Obiang is now improperly using the shell company as a tool to assert his personal interests, including "personal satisfaction," "reputation," and the right to provide input into the selection of a charity.  These are not the rights of Sweetwater Malibu CA, LLC.  Nevertheless, even if Obiang brought the instant Complaint in his own name, it would be subject to the same unfixable standing issues as Plaintiff's Complaint.

[2] Unless otherwise specified, all defined terms herein have the same meanings as stated in Defendants' Motion to Dismiss, Dkt. No. 18.

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

- **Redressable**.  Even if Plaintiff was somehow injured by the amount of Sale Proceeds (and it was not), a favorable decision could not address that "injury" because the Settlement Agreement explicitly bars Plaintiff from recovering any additional Sale Proceeds.  As admitted in its Opposition, Plaintiff pursues this case to appease Obiang's "personal satisfaction" and improve his reputation.  But Obiang is not the plaintiff in this case, and the claims asserted in Plaintiff's Complaint have nothing to do with these ends.  They have only to do with money—money that Plaintiff cannot recover.

Because it cannot satisfy any of these standing requirements, Plaintiff asks this Court to ignore first principles and the many cases applying these principles.  Plaintiff instead asks the Court to disregard the injury requirement and invent a new category of "de facto" standing.  Plaintiff asks the Court to recognize a number of unpled "intangible injuries" that it did not suffer and no court has recognized.  And Plaintiff asks the Court to apply the narrow and disfavored concept of "third party" standing not only in a novel fashion, but also to an entity controlled by an individual who has been accused by various countries—and convicted by one—of embezzling and misappropriating money from the very people he seeks to represent.[3]  This Court should

---

[3] In an effort to deflect the serious allegations of Obiang's bribery, theft, and embezzlement, Plaintiff asserts that Defendants' Motion rests on "old disputed and disproven" allegations.  Not true.  Defendants cited to allegations of Obiang's widespread corruption contained in the Thriller Jacket Case.  (Dkt. 18 at 2:15-3:6 (citing Dkt. 18-1 Ex. 1)).  Plaintiff accuses Defendants of "fail[ing] to disclose . . . that their most inflammatory allegations were rejected by this Court," citing to an August 20, 2013 Summary Judgment ruling purportedly from the Thriller Jacket Case.  (Dkt. 21 ("Opp.") at 1:14-15).  Plaintiff's citation is false and misleading.  The Ruling it cites actually had nothing to do with the Thriller Jacket Case.  That Ruling was issued in the Glove Case, see C.D. Cal. Case No. 11-cv-03582, Dkt. 105 (Aug. 20, 2013), and was issued nearly four months before the complaint in the Thriller Jacket Case was even filed.  See Dkt. 18-1 Ex. 1 at p. 4 (showing Dec. 12, 2013 filing date).  In the Thriller Jacket Case, the United States sought forfeiture based on Obiang's corruption and this Court allowed those claims to move forward.  See Thriller Jacket Case, C.D. Cal. No. 13-cv-09169, Dkt. 40 at 8.  More recently, the FBI again made clear that Obiang's forfeiture was based on corruption.  See 11/29/2018 FBI Statement Before Congress ("Nguema Obiang reported an official government salary of less than $100,000 a year during his 16 years in public office. Nguema Obiang, however, used his position and influence to amass more than $300 million in assets through fraud and corruption, money which he used to buy luxury real estate and vehicles, among other things. Nguema Obiang then orchestrated a scheme to fraudulently open and use bank accounts at financial institutions in California to funnel millions of dollars into the United States. Because U.S. banks were unwilling to deal with Nguema Obiang out of concerns that his funds derived from corruption, Nguema Obiang used nominees to create companies that opened accounts in their names, thus masking his

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

1   reject these attempts to save this flawed lawsuit and dismiss Plaintiff's Complaint, with prejudice.

2   And while Plaintiff's allegations are without merit, to the extent a party with a particular and

3   concrete interest disagrees, they will have the same access to the Court as Plaintiff.

4   **II.    PLAINTIFF FAILS TO DISTINGUISH THE MANY CASES ESTABLISHING ITS**
        **LACK OF STANDING**

5

6       It is well established that when a person or entity loses or gives away their interest in a

7   property, they lose standing to seek judicial relief based on an interest in that property.  This rule

8   regularly applies in forfeiture proceedings, like the one at issue here.  *See, e.g., United States v.*

9   *$14,344.50 in U.S. Currency*, 49 F. App'x 207, 208 (10th Cir. 2002) (claimant lacked standing to

10  contest forfeiture because, as part of plea agreement, he agreed to "forfeit and otherwise waive

11  any ownership right he might possess" in the items at issue); *United States v. $8,720 in U.S.*

12  *Currency*, 264 F.3d 1140, 1140 (5th Cir. 2001) ("[A] party seeking to challenge the

13  Government's forfeiture of property must demonstrate at least a facially colorable lawful interest

14  in the seized item.");  *United States v. Stokes*, 191 F. App'x 441, 442-43 (7th Cir. 2006) (plaintiff

15  "lacked Article III standing to contest the forfeiture . . . because he abandoned any interests in the

16  property with the language in the plea agreeing 'that any interest he holds in each of the listed

17  properties is hereby forfeited.'").  A party that enters into a forfeiture agreement relinquishes their

18  interest in the property even if, as Plaintiff here, they retain some control over the property's sale

19  and are entitled to a disbursement from the sale proceeds.  *See United States v. Grover*, 119 F. 3d

20  850, 852 (10th Cir. 1997).

21      Plaintiff attempts to distinguish these forfeiture authorities by claiming that the Settlement

22  Agreement did not result in an "immediate forfeiture" of the Sweetwater Property or the portion

23  of the Sale Proceeds allocated for the charity.  Dkt. 21 (Opp.) at 9:18; *see also id.* at 10:7-14,

24  4:6-7.  Specifically, without even attempting to address *Grover*, Plaintiff claims that it could not

25  have relinquished its interest in the Property because then it would not have been able to sell the

26  ―――――――――――――

27  relationship to the accounts and the source of the funds brought into the United States. The
    department ultimately reached a settlement of its civil forfeiture actions against assets owned by

28  Nguema Obiang.")(available at https://www.fbi.gov/news/testimony/combating-money-
    laundering-and-other-forms-of-illicit-finance).

1   Property, *id.* at 10:10-11, or retained the power to help choose the charity that received the

2   remaining Sale Proceeds.  *Id.* at 10:13-16.

3           But it does not matter whether the transaction is characterized as a forfeiture, sale,

4   relinquishment of rights, transfer, gift, or otherwise.  What matters is whether Plaintiff retains a

5   financial interest in the property after the agreement.  To determine whether a party relinquished

6   interest in a property through a contract, courts "ascertain the intention of the parties and examine

7   the substance of what was granted," *Prime Tek II, LLC, v. A-Roo Co.,* 222 F.3d 1372, 1378 (Fed.

8   Cir. 2000) (assessing post-agreement standing to bring patent claim) and "look at what rights

9   were retained" by the party who relinquished its interest.  *Id.*  And there is no standing where a

10  party, like Plaintiff here, retains no interest in the asset at issue.  This concept applies regardless

11  of both the type of process—be it a forfeiture, foreclosure, or bankruptcy—and the type of

12  underlying asset—be it real property, patents, copyrights, or anything else—at issue.[4]

13          Thus, Plaintiff's claim that it did not relinquish its interest in the Sale Proceeds because

14  there was no "forfeiture" not only lacks any factual basis,[5] it misses the point:  regardless of

15  whether Plaintiff lost its interest in the Sale Proceeds through a forfeiture to the government or

16

17  [4] *See, e.g., Hobson v. Wells Fargo Bank*, NA, 576 F. App'x 678, 679 (9th Cir 2014) (finding that
18  after foreclosure sale, plaintiff lacked standing to challenge bank's assignment of real property
    "because she no longer had an interest in the property"); *Jackson v. Wells Fargo*, 18 F. Supp. 3d
19  3, 4 (D.D.C. 2014)(finding plaintiff had no standing to assert claims against bank where the
    property was sold and she no longer had an interest in it); *McGlothlin v. Drake*, 2012 WL
20  1768098, at *7 (E.D. Ark. May 16, 2012) ("[W]here the inventor or patentee relinquishes all of
    his legal interest in a patent to another, the patentee no longer has standing to sue for patent
21  infringement occurring thereafter."); *Arachnid, Inc. v. Merit Indus., Inc*., 939 F.2d 1574, 1579
    (Fed. Cir. 1991) ("The general rule is that one seeking to recover money damages for
22  infringement of a United States patent (an action 'at law') must have held the legal title to the
    patent during the time of the infringement."); *Rudnicki v. WPNA 1490 AM*, 2009 WL 4800030, at
23  *9 (N.D. Ill. Dec. 10, 2009) (After a copyright holder that contractually transfers interests in a
    work has no standing to assert claims for infringement); *Kilgore v. Wells Fargo Home Mortg*.,
24  2013 WL 71781, at *1 (E.D. Cal. Jan. 7, 2013) ("When a plaintiff declares bankruptcy, all the
    plaintiff's legal or equitable interests in any cause of action become the bankruptcy estate's
25  property and the bankruptcy trustee represents any pending  lawsuit or action. The plaintiff lacks
    standing to pursue the lawsuit or action.").
26

27  [5] Not even Plaintiff's ability to oversee the Sweetwater Property's sale was an enduring right:
    under the Settlement Agreement, the United States could take control of the sale if the Property
28  remained unsold after 25 months.  (Dkt. 18-1 Ex. 2 ¶ 19).

gave that interest to a charity, the Settlement Agreement deprived it of a financial interest in those Proceeds.  The Settlement Agreement explicitly provides that Plaintiff has no interest in the Sale Proceeds and prevents Plaintiff from *ever* being able to assert a financial interest in those funds. The Settlement Agreement distributes the sale proceeds in three tranches: first, payment/reimbursement of fees and costs associated with the sale; second, a $10.3 million payment to the United States; and, finally, the remainder to a charity. (Dkt. 18-1 Ex. 2 ¶ 27). Plaintiff retained only one financial connection to the Sale Proceeds: its ability to seek repayment for costs of repair, which is insufficient to maintain standing.[6]  Although Obiang retained an additional right to provide input on selecting the charity, Plaintiff does not have that right (it is personal to Obiang) and this lawsuit does not seek to vindicate that right in any event.  *See id.* ¶ 26.  Accordingly, it is plain that Plaintiff's suit is not about seeking repair cost compensation, or even about benefitting the charity.  Instead, it is about collecting Sale Proceeds that Plaintiff has no interest in and that it agreed, as part of the Settlement Agreement, not to seek.  *Id.* ¶ 40.

In short, the Settlement Agreement deprived Plaintiff of any continuing financial interest in the Sale Proceeds, so it lacks standing to bring a claim related to those proceeds.  That is enough to require dismissal.

## III.   PLAINTIFF FAILS TO ALLEGE A TANGIBLE FINANCIAL LOSS CAUSED BY DEFENDANTS

Plaintiff's opposition essentially concedes it is not entitled to the vast damages asserted in the Complaint.  When forced to identify its tangible losses of money and property, Plaintiff no longer includes its hyperbolic allegations regarding the sales price.  Its lone argument relates to the $1 million repair credit granted to the Property's buyer.  That credit cannot establish Plaintiff's standing for three reasons:

***Plaintiff must seek reimbursement from the government, not Defendants.***  Under the Settlement Agreement, Sweetwater may seek reimbursement for "actual fees and costs reasonably incurred by the Parties after execution of this Settlement Agreement in connection with the repair, maintenance and sale of the Defendant Res."  (Dkt. 18-1 Ex. 2 ¶ 27(A)).  Crucially, however,

---

[6] *See* Section III, *infra*.

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

Plaintiff must seek reimbursement of those funds from the United States, not any other party. *Id.* at ¶ 16; *see also* ¶ 17 (the United States agrees not to seek forfeiture of funds or assets used for maintenance and repair). The Complaint does not allege that Plaintiff even sought reimbursement for the $1 million repair credit from the United States, and even if it did, Defendants cannot be liable for the United States' independent decision not to reimburse Plaintiff for the repair credit. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (injury must be "fairly traceable to the challenged conduct of the defendant"). Indeed, Plaintiff's Complaint concedes this point when it alleges that the United States—not Defendants—"has taken the position that Sweetwater is liable for this $1 million." Dkt. 1 at 8:11-12. Nor does Plaintiff make any effort to address the controlling Ninth Circuit opinion in *Prescott v. County of El Dorado*, under which plaintiffs were found to lack standing because an asserted injury "cannot be the result of the independent action of some third party not before the court." 298 F.3d 844, 846 (9th Cir. 2002) (internal quotation marks omitted). As a result, this alleged injury is not traceable to Defendants' actions and cannot be redressed in this litigation.

**The repair credit has nothing to do with the sale.** Even if, as Plaintiff wrongly alleges, Defendants somehow caused the Property to sell for less than it could have, that would not have prevented Plaintiffs from recovering the repair credit. The Settlement Agreement called for maintenance and repair reimbursements to come out of the first payment tranche, *see* Dkt. 18-1 at ¶ 27, and the actual sale proceeds more than covered that tranche. *See* Dkt. 18 at 7:1-2 & n.11. If Plaintiff cannot recover the repair credit, it is because of a government action, not a lack of available funds.

**Plaintiff's supposed damages are theoretical at best.** The existence of an actual, albeit unadjudicated, claim for this money does not constitute immediate or imminent harm for standing purposes. Opp. at 13:5-6. Any purported damages flowing from the $1 million repair credit would be at the end of a long chain of hypothetical events: Plaintiff would first have to seek reimbursement from the United States (*see* Dkt. 18-1 Ex. 2 ¶ 16); the government would then have to deny Plaintiff's request and affirm its position that Plaintiff was liable for the repair costs; Plaintiff would have to try to adjudicate a claim against the United States in this Court or

1    elsewhere; and, finally, that litigation would have to be unsuccessful.  These speculative damages

2    and unresolved claims cannot confer standing.  *See Whitmore v. Arkansas*, 495 U.S. 149, 159-60

3    (1990) (denying standing to party when injury depended on speculative prediction of the outcome

4    of unresolved litigation); *Lujan,* 504 U.S. at 565 n.2 (holding that there was no Article III

5    standing where chain of speculative possibilities did not establish that injury based on plaintiff's

6    potential future action was "certainly impending");  *see also Moss v. Associated Press*, 956 F.

7    Supp. 891, 893 (C.D. Cal. 1996) ("no matter how meritorious one's claim may appear at the

8    outset, the course of litigation is rarely predictable"); *cf. Sanner v. Bd. of Trade of City of Chi.*, 62

9    F.3d 918, 924 (7th Cir. 1995) (farmers that did not sell crops at depressed prices lacked Article III

10   standing, in contrast to farmers who did sell because "the fact of a sale at an allegedly depressed

11   price establishes discernible injury in a manner in which a failure to sell cannot").

**IV.    PLAINTIFF CANNOT SAVE THIS FLAWED CASE BY MAKING UP NEW LAWS OR SEEKING TO APPLY NARROW, INAPPLICABLE AUTHORITY ABOUT LIMITED THIRD-PARTY RELATIONSHIPS**

14   **A.    The Court must reject Plaintiff's argument that it need not suffer damages**

15         Plaintiff claims that its "status as a contracting party" gives it "de facto" standing to sue,

16   regardless of whether it suffered additional intangible or tangible monetary losses as a result.

17   Opp. at 11.  Plaintiff's authority does not support this legal proposition and it is inapplicable in

18   this case.

19         Plaintiff cites a number of breach of contract cases where courts found standing, but those

20   cases do not support its position.  Unlike this case, each and every one of those cases alleges

21   specific "concrete and particularized" financial harm.  *N. Cypress Med. Ctr. Operating Co. v.

22   Cigna Healthcare*, 781 F.3d 182, 193 (5th Cir. 2015), involved a dispute over an insurer's

23   obligation to pay a hospital for medical services provided to insured patients.  The insurer moved

24   to dismiss for lack of standing because the insured patients assigned their entitlement to the

25   hospital.  The existence of the contract was not in dispute, but the Court focused its standing

26   analysis on whether the plaintiff suffered damages.  *See id*. ("Cigna allegedly did not pay the

27   patients or their assignee the full amount it owed to the patients under the contract"; "a patient

28   suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless

of whether she has directed the money be paid to a third party for her convenience.")  The other cases cited, like *Cypress*, each included a specific and concrete financial injury.  *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc*., 770 F.3d 1282, 1288 (9th Cir. 2014) (Plaintiffs alleged that they were entitled to "payment of the denied claims" which had been assigned by their patients); *DiCarlo v. St. Mary Hosp*., 530 F.3d 255, 263 (3d Cir. 2008) (noting that plaintiff's obligation to pay hospital charges is sufficient to confer standing for breach of contract claim); *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn*., 973 F.2d 1311, 1317 (6th Cir. 1992) (holding that plaintiffs alleged "economic injury" by removing right to elect voluntary participation in the Medicaid program); *Biomed Pharm., Inc. v. Oxford Health Plans (NY), Inc*., 2011 WL 803097, at *2 (S.D.N.Y. Feb. 18, 2011) (plaintiff was financially injured by defendant who reduced its payments to plaintiff); *Katz v. Pershing, LLC*, 672 F.3d 64, 69 (1st Cir. 2012) (finding plaintiff satisfied standing requirement in case where defendants failed to protect sensitive nonpublic personal information).[7]

Plaintiff also wrongly seeks to rely on *Spokeo*.  Spokeo was a people search engine that disseminated information about individuals.  It disseminated false information about the plaintiff, Robins.  In analyzing an alleged injury in *Spokeo*—dissemination of false information by a credit-reporting agency—the Supreme Court held that a violation of failing to comply with a statute's procedural requirements and even dissemination of indisputably false information, without more, cannot establish concrete harm.  It thus held that the violations must actually harm the plaintiff and that not all violations satisfy that test.  136 S. Ct. at 1550 ("[N]ot all inaccuracies cause harm or present any material risk of harm.").  It required Robins to establish concrete personal harm.  On remand, the Ninth Circuit revisited the issue and held that Robins sufficiently alleged in the complaint concrete personal harm: the inaccurate information damaged his employment prospects.  *See Robins v. Spokeo, Inc*., 867 F.3d 1108, 1117 (9th Cir. 2017), *cert. denied*, 138 S.

---

[7] Defendants note that many of the cases cited by Plaintiff involve lawsuits brought by healthcare providers on behalf of patients.  While Plaintiff does not rely on these cases to support its argument that it may bring claims on behalf of others, Defendants note that under ERISA, healthcare providers are allowed by statute to "bring ERISA suits standing in the shoes of their patients."  *N. Cypress Med. Ctr.*, 781 F.3d at 191; *see also* 29 U.S.C. § 1132(a)(1)(B).

Ct. 931 (2018). *Spokeo* does not hold that a plaintiff who lacks a concrete injury (as with Plaintiffs here) has standing to sue.

Finally, Plaintiffs' reliance on Judge Thomas' concurrence in *Spokeo* only highlights the fact that Plaintiffs' position is not the law. That concurrence did not garner support from the other seven justices in the majority—Justice Thomas was speaking only for himself, not for the Court. Indeed, Justice Thomas' views on this precise issue—standing requirements to vindicate private rights—appear inconsistent with the majority of the court. *See Frank v. Gaos*, 139 S. Ct. 1041, 1047 (2019) (Thomas, J., dissenting) (reaffirming Judge Thomas' view that a plaintiff seeking to vindicate a private right of action need only allege invasion of that right). In any event, Justice Thomas' concurrence does not help the Plaintiff. Justice Thomas wrote that "[m]any traditional remedies for private-rights causes of action—such as for trespass, infringement of intellectual property, and unjust enrichment—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right" and therefore concluded a provision to vindicate a private right many not require further damages to establish standing. Therefore, in Justice Thomas' view, if Congress has created a private duty, a violation of that duty would suffice for standing. This case, however, is not a based on a private duty created by Congress such as privacy. Nor is it one of those traditional cases where a private right of action does not require damages such as privacy, infringement, or trespass or where damages would be difficult to calculate. This is a standard business dispute for money damages.[8] As such, even under Justice Thomas' analysis, Plaintiff would lack standing.

---

[8] Plaintiff's Complaint does not seek nominal damages and his Opposition does not claim that such damages could be sufficient for purposes of Article III standing. Nor could either properly do so. As an initial matter, nominal damages would not accrue to Plaintiff and would be payable to the charity instead. (Dkt. 18-1 Ex. 2 ¶ 27). Also, nominal damages do not accompany every breach of contract. They only apply when—unlike here—actual injury is shown but the resulting damages are speculative. *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990-91 (N.D. Cal. 2015) (citing Cal. Civ. Code § 3360) ("Section 3360 sets forth the rule that a plaintiff who has suffered an injury, but whose damages are speculative, is entitled to nominal damages. But the statute does not relieve the plaintiff of proving injury.") (internal citation omitted). Even when they are available, nominal damages do not confer Article III standing. *See Ruiz v. Gap, Inc.*, 380 Fed. Appx. 689, 692 (9th Cir.2010) (*quoting Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir.2000)) (affirming summary judgment where plaintiff "failed to adduce any evidence of the appreciable and actual damage necessary to sustain a contract claim under

9

**B.    Plaintiff suffered no "intangible injury" recognized in the law**

Plaintiff's argument that it has standing due to "intangible injuries" stemming from a property transaction fails.  To begin with, Plaintiff did not plead intangible injuries, such as reputational harm or personal satisfaction.  Plaintiff cites no authority for the proposition that these types of injuries would confer standing in a business dispute seeking money damages.

More importantly, however, the concept of "intangible injuries" for purposes of standing is inapplicable to this dispute.  In *Robins v. Spokeo, Inc*., 867 F.3d 1108, 1112 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018), the sole case upon which Plaintiff relies, *Congress* defines intangible injuries for purposes of Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549–50 (2016), as revised (May 24, 2016) (noting that in a case involving the Fair Credit Reporting Act, "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified") (citations omitted).  Congress did similarly for other statutes.  *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding standing where violation of the Telephone Consumer Protection Act's implicated intangible right of privacy and solitude); *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017) (finding standing for privacy violation of Video Privacy Protection Act because "congressional judgment leaves little doubt that [the VPPA] is a substantive provision that protects concrete interests").  Unlike specific rights created by Congress, Plaintiff cites no support for its sweeping position that such vague and unpled intangible injuries are sufficient to establish standing in a business dispute that seeks only money damages.

Finally, the actual "intangible injuries" discussed in the Opposition, such as "personal satisfaction," and "reputation," would be suffered by Obiang, not Plaintiff.  But Sweetwater Malibu CA, LLC is the sole plaintiff in this case, not Obiang.  Plaintiff cannot play games by including one party to the lawsuit and then relying on the interests of another.

---

California law," because "'under California law, a breach of contract claim requires a showing of appreciable and actual damage'"); *Svenson v. Google, Inc*., 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016) ("[A]lthough California law permits recovery of nominal damage when it is difficult to quantify the amount of damages flowing from a particular injury, a plaintiff still must show the *fact* of injury in order to have Article III standing. The potential availability of nominal damages once an injury has been established does not satisfy Article III.") (emphasis in original).

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

**C.      Plaintiff does not come close to falling within a special relationship that would allow it to assert these claims as a third party**

A party lacking a direct, personal stake in the litigation may not invoke the power of the federal courts. *See Lujan*, 504 U.S. at 573 (plaintiff must demonstrate a "concrete private interest in the outcome of [the] suit"); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (plaintiff must seek relief that "directly and tangibly benefits him"). Courts have recognized a number of special relationships, however, that may satisfy this standard despite the fact they involve third parties: trustees bring suits to benefit their trusts; guardians *ad litem* bring suits to benefit their wards; receivers bring suit to benefit their receiverships; assignees in bankruptcy bring suit to benefit bankrupt estates; executors bring suit to benefit testator estates, and assignees for collection. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 278 (2008). There are also certain recognized statutory procedural rules that also allow third party claims, such as *qui tams*. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000) (noting *qui tam* relator entitled by statute to sue on behalf of the United States and also finding that relator had a concrete interest in the outcome of the suit because of relator's entitlement to recover a portion of the funds). This case falls within none of these categories.

Plaintiff relies most heavily on standing by assignees of claims. Those cases are irrelevant. As set forth in *Sprint Communications Co. L.P. v. APCC Services, Inc.*, since the 19th Century, Courts have allowed "suits by individuals who were assignees for collection only, i.e., assignees who brought suit to collect money owed to their assignors but who promised to turn over to those assignors the proceeds secured through litigation." *See* 554 U.S. at 280. Analyzing this historical precedent, the Court in *Sprint* concluded, "[l]awsuits by assignees, including assignees for collection only, are cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Id*. at 285.[9]

---

[9] Other cases relied upon by Plaintiff are similarly off point. *See e.g., Mitchell v. Blue Cross Blue Shield of N. Dakota*, 2018 WL 3463260, at *6 (D.N.D. July 18, 2018) (finding statutory standing under ERISA and where plaintiff assigned portions of benefits to third party); *N. Cypress Med. Ctr.,* 781 F.3d at, 193 (ERISA action where patient assigned claim to health care provider); *Little v. Shell Expl. & Prod. Co*., 690 F.3d 282, 289 (5th Cir. 2012) (relator in a *qui tam* action has standing to assert claims on behalf of the United States); *Pac. Sound Res. v. Burlington N. &*

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

But the problem for Plaintiff is that it is not an assignee, nor does it retain any financial interest in the claim.  Rather, Plaintiff relinquished any such interest through the Settlement Agreement.  Because that is the dispute at hand, this case is not analogous to cases like *Sprint*, and instead is controlled by the forfeiture, patent, copyright, and bankruptcy cases, which hold there is no standing once a party relinquishes its interest in property.  *See $14,344.50 in U.S. Currency*, 49 F. App'x at 208*; $8,720 in U.S. Currency*, 264 F.3d at 1140*; Stokes,* 191 F. App'x at 442-43*; Grover*, 119 F. 3d at 852; *see also* FN4, *supra*.  Indeed, the Settlement Agreement— under which Obiang and Plaintiff forfeited and relinquished their interests in the Sweetwater Property and Sale Proceeds in exchange for the Government's agreement not to continue pursuing forfeiture actions against them, Dkt. 18-1 Ex. 2 ¶¶ 35 (dismissing <u>Gulfstream</u> Case), 44 (dismissing <u>Thriller Jacket</u> and <u>Glove</u> Cases)—is readily comparable to a criminal defendant evading worse outcomes by relinquishing his interest in seized property as part of a forfeiture plea, *see Grover,* 119 F. 3d 850, or a debtor relinquishing its assets to a bankruptcy estate to put an end to pending actions by its creditors.

### D.    The catch-all provision does not apply to this type of dispute and even if it did, Plaintiff cannot satisfy its elements

Plaintiff's final "catch-all" argument is without merit.  The Supreme Court recognized in *Kowalski v. Tesmer* that it has "not looked favorably upon third-party standing" outside the context of matters such as First Amendment cases or cases where "enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights." 543 U.S. 125, 130 (2004).  Applying the narrow "close relationship" and "hindrance" test articulated in *Kowalski* in this case, Plaintiff claims that its lack of standing should be overlooked because of Obiang's status as the Vice President of Equatorial Guinea and the fact a charity cannot currently assert its rights.

---

*Santa Fe Ry. Co*., 286 F. App'x 381, 383 (9th Cir. 2008) (finding standing where plaintiff suffered direct injury in cleanup expenses for property they still owned despite obligation to turn the funds to a trust).

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

Both arguments fail.  This case does not involve third parties' First Amendment rights, discriminatory zoning laws, or similar restrictions of the type for which *Kowalski* carved out this exception and Plaintiff cites no cases applying it in a similar circumstance.  In *Kowalski*, the Court even rejected the standing arguments of criminal defense attorneys who sought to invoke the rights of indigent defendants who were potential clients.  *See id.*

In any event, Plaintiffs cannot come close to meeting either the closeness or hindrance tests.  To begin, the Plaintiff in this case is Sweetwater Malibu CA, LLC, not Obiang.  Sweetwater Malibu CA, LLC is a California limited liability company, (Dkt. 1 ¶ 10).  It has no relationship with the people of E.G.

Obiang, Sweetwater's sole member, similarly lacks a close relationship with the people of Equatorial Guinea.  As reported by Human Rights Watch, "vast oil revenues [in Equatorial Guinea] fund lavish lifestyles for the small elite surrounding the president, while most of the population lives in poverty." [10]  Moreover, at the time of the settlement with Obiang, the United States stated that it sought Obiang's funds because they were derived from "relentless embezzlement," "extortion," and "shameless loot[ing of] his government." [11]  France more recently convicted Obiang of money laundering and sentenced him to a three-year suspended prison term, a fine of €30 million, and confiscation of significant assets.[12]  Switzerland has also

---

[10] https://www.hrw.org/sites/default/files/related_material/Equatorial%20Guinea_2012.pdf

[11] Second Vice President of Equatorial Guinea Agrees to Relinquish More Than $30 Million of Assets Purchased with Corruption Proceeds, United States Department of Justice, (October 10, 2014) (https://www.justice.gov/opa/pr/second-vice-president-equatorial-guinea-agrees-relinquish-more-30-million-assets-purchased).

[12] *See e.g.*, *Equatorial Guinea v. France: Preliminary Objections*, 2019 WL 1210207 (I.C.J. 2019) ("The tribunal delivered its judgment on 27 October 2017, in which it found Mr. Teodoro Nguema Obiang Mangue guilty of money laundering offences committed in France between 1997 and October 2011. He was sentenced to a three-year suspended prison term and a suspended fine of €30 million. The tribunal also ordered the confiscation of all the assets seized during the judicial investigation").  Obiang has challenged France's conviction on numerous grounds.

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

1  seized funds from Obiang and there may be investigations pending in other countries.[13]  On these

2  facts, Plaintiff does not have a sufficiently close relationship under *Kowalski*.

3        Nor is there a hindrance.  While Defendants are confident that the claims against them are

4  without merit, a party with an actual interest in the Sale Proceeds will have access to the Courts

5  should it disagree.  Furthermore, any hindrance is due to a failure to abide by the terms of the

6  Settlement Agreement, which provided a timeline for designating a recipient of the funds that has

7  long ago passed.  *See* Dkt. 18-1 at ¶ 23.

8  **V.    THE COMPLAINT MUST BE DISMISSED BECAUSE EACH CLAIM**
   **REQUIRES DAMAGES**
9

10       While Plaintiff seeks to confuse the Court by citing inapplicable rules regarding standing,

11 it entirely ignores that Defendants also moved to dismiss the entire Complaint under Fed. R. Civ.

12 P. 12(b)(6) because the Complaint's allegations cannot establish a right to any damages.  Mot. at

13 8:6-7 ("Because Plaintiff's allegations cannot establish a right to any damages, its claims are also

14 subject to dismissal under Fed. R. Civ. P. 12(b)(6)."); *see also id.* at 8-9 (citing *Moss v. U.S.*

15 *Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to

16 dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be

17 plausibly suggestive of a claim entitling the plaintiff to relief.")).  Plaintiff's Opposition fails to

18 respond to this argument.  Instead, it merely reiterates the crux of its purported injury: that but for

19 Defendants' purported actions, the Sweetwater Property would have sold for more than it did.

20 Opp. at 2:5-6 (alleging that Defendants "stole millions of dollars in secret profits that should have

21 gone to [Sweetwater]"); *id.* at 8:4-5 (alleging that Defendants did not tell Sweetwater that "other

22 buyers had offered to pay millions more").  Notably, like its Complaint, Plaintiff's Opposition

23 fails to (and, indeed, cannot) allege how Defendants' purported failure to sell the Sweetwater

24 Property for maximum value actually injured Plaintiff.  Thus, for the reasons stated in

25

26

27 ──────────────
   [13] *See e.g.,* April 11, 2019 Letter to Chairwoman Waters RE: Corporate Transparency Act of 2019
   from the Human Rights Watch, available at (https://www.hrw.org/news/2019/04/11/letter-
28 chairwoman-waters-and-ranking-member-mchenry-re-corporate-transparency-act).

Defendants' Motion, this Court should also dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## VI.   **PLAINTIFF WAIVED ITS CLAIMS**

Plaintiff's Opposition notably fails to address the first and primary argument in the Motion's waiver section—that Plaintiff is bound by its covenant that it will "not seek, through any court proceeding or other process, the return of the [Sweetwater Property] or any proceeds as a result of the liquidation of the [Sweetwater Property] except as otherwise provided herein." (Dkt. 18-1 Ex. 2 ¶ 40).  This covenant is fatal to Plaintiff's claims, all of which seek to recover Sale Proceeds.  (*See* Mot. at 13:19-14:13).  In *Grover*, the plaintiff made a similar deal as part of his forfeiture agreement, promising not to contest the Government's transfer of his forfeited property in exchange for "the government's promise not to seek forfeiture of other pieces of property which were potentially forfeitable," the right to "market the [forfeited] house and conduct the sale himself," and the right to "keep a portion of the proceeds."  119 F.3d at 852.  When the plaintiff nonetheless sued to contest the forfeited property's transfer, arguing that the time for the government to institute a civil forfeiture had run, *id.*, the Tenth Circuit rejected his argument, noting that by signing the forfeiture agreement he had "relinquished any possessory claim he had to the property," and as a matter of equity it could not "ignore [Grover's] breach of the agreement" because doing so would "unjustly enrich Mr. Grover at the government's expense" by letting him "receive all the benefits of his bargain as well as the money he agreed to transfer to the government in return for those benefits."  *Id.*

The logic from *Grover* applies.  Plaintiff promised not to seek the return of Sale Proceeds as part of a negotiated agreement with the Government, in which Plaintiff benefitted from, *inter alia*, the Government's agreement to dismiss certain pending forfeiture actions and not seek forfeiture of Obiang's other assets (including those held by his shell companies like Plaintiff). *See, e.g.*, Dkt. 18-1 Ex. 2 ¶¶ 35, 44 (agreeing to dismiss Gulfstream, Thriller Jacket, and Glove Cases); *id*. ¶ 36 (agreeing that DOJ will cease its efforts to seize Obiang's Gulfstream jet). Having received the benefit of its bargain, Plaintiff, like *Grover*, now seeks to renege on its part of the deal.  It should not be able to do so.

15

Plaintiff's Opposition also mischaracterizes the text of the Settlement Agreement.  While Plaintiff claims that the Settlement Agreement "on its face does not extend any release to Defendants," (Dkt. 21 at 17:23), the Settlement Agreement contains broad mutual releases by Plaintiff and the United States, evidencing the parties' clear intent to preclude future litigation, such as the instant case, that is "in connection with or arising from" the Thriller Jacket, Glove, and Gulfstream Cases.  Compare Dkt. 18-1 Ex. 2 ¶ 42 (release by Obiang and Sweetwater of claims against "the United States, and any and all officers, agents, representatives, attorneys, and employees of same"), with *id*. ¶ 43 (release by United States of claims against "Sweetwater Malibu, LLC, [Obiang], and . . . any and all officers, agents, representatives, . . . and employees of same"); *see S. Cal. Gas Co. v. Syntellect, Inc*., 534 F. App'x 637, 638 (9th Cir. 2013) (contractual phrases such as "arising out of," "arising from," and "resulting from" are read broadly by California courts); *see also Zhang v. Snyder, Inc*., 2007 WL 2069915, at *6 (Cal. Ct. App. July 20, 2007) (phrase "in connection with or arising from" is "concededly broad") (internal quotation marks omitted).  Furthermore, while Plaintiff claims that these releases pertain "only to any existing claims" at the time the Settlement Agreement was signed, (Opp. at 17:24-25), that limitation is simply not stated in the text of the releases.  *See* Dkt. 18-1 Ex. 2 ¶¶ 42, 43 (release "from all claims . . . in connection with or arising from the Thriller Jacket Case, the Glove Case and the Gulfstream Case or any allegations contained therein").  Accordingly, per the terms of the very Settlement Agreement that Plaintiff negotiated and agreed to, this case must be dismissed.

*///*

REPLY IN SUPPORT OF MOTION TO DISMISS
2:19-CV-01848-GW-SS

VII.   **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety, with prejudice. [14]

Dated:  May 20, 2019

DAVID L. KIRMAN
O'MELVENY & MYERS LLP

By: _____
David L. Kirman

Attorneys for Defendants
Mauricio Umansky and UMRO Realty Corp., a
California Corporation, d/b/a The Agency

---

[14] Defendants are not waiving their right to compel arbitration and reserve the right to do so in the event that the Court denies this Motion.  *See e.g., Echavarria v. Adir Int'l., LLC*, 2016 WL 3397416, at *4 (C.D. Cal. Jun. 13, 2016) (permitting motion to compel arbitration following motion to dismiss initial complaint); *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1203-04 (2003) ("[M]erely participating in litigation, by itself, does not result in a waiver.").