UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-1848-GW(SSx) | Date | June 3, 2019 |
|---|---|---|---|
| Title | *Sweetwater Malibu CA, LLC v. Mauricio Umansky, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie E. Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| R. Kevin Fisher | David L. Kirman |

**PROCEEDINGS:** DEFENDANTS MAURICIO UMANSKY AND UMRO REALTY CORPORATION'S MOTION TO DISMISS COMPLAINT [18];

SCHEDULING CONFERENCE

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Defendants' Motion is continued to July 1, 2019 at 8:30 a.m. The Court orders simultaneous cross-supplemental briefs limited to seven pages to be filed by June 14, 2019. Simultaneous cross-replies limited to five pages are to be filed by noon on June 27, 2019.

Plaintiff's request to add party is granted.

The Court sets the following:

| | |
|---|---|
| Mediation Cutoff | December 4, 2019 |
| Post-Mediation Status Conference | December 5, 2019 at 8:30 a.m. |
| Discovery Cutoff | December 24, 2019 |
| Expert Discovery Cutoff | January 24, 2020 |
| Motion Hearing Cutoff | February 21, 2020 |
| Pretrial Conference | March 19, 2020 at 8:30 a.m. |
| Jury Trial | March 31, 2020 at 9:00 a.m. |

No further amendments allowed; Compliance with FRCP 16 is required. Defendant's Answer is due two weeks from the date of this order.

The parties are referred to ADR Procedure No. 3: Private Mediation.

|   |   : 27 |
|---|---|
| | Initials of Preparer  JG |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-1848-GW(SSx) | Date | June 3, 2019 |
|---|---|---|---|
| Title | *Sweetwater Malibu CA, LLC v. Mauricio Umansky, et al.* | | |

cc: ADR Program

|  | : | 27 |
|---|---|---|
| | Initials of Preparer | JG |

<u>Sweetwater Malibu CA, LLC v. Umansky et al</u>; Case No. 2:19-cv-01848-GW-(SSx)
Tentative Ruling on Motion to Dismiss

I. **Background**

Plaintiff Sweetwater Malibu CA, LLC, formerly known as Sweetwater Malibu, LLC (collectively, "Sweetwater") sues Mauricio Umansky and UMRO Realty Corp. ("Defendants") for: (1) breach of settlement agreement, (2) breach of fiduciary duties, (3) violations of California statutes governing licensed real estate brokers, (4) breach of listing agreement, (5) intentional fraud, (6) negligent misrepresentation, and (7) negligence and negligence per se. *See generally* Complaint, Docket No. 1.

Now, Defendants move to dismiss this action, claiming that Sweetwater lacks standing. *See* Motion to Dismiss ("Motion"), Docket No. 18. Alternatively, Defendants argue that Sweetwater waived its right to sue under a prior settlement agreement. *Id.* Sweetwater opposes. *See* Opposition re: Motion ("Opp'n"), Docket No. 21. Defendants filed a reply. *See* Reply, Docket No. 22.

For the reasons herein, the Court is inclined to **DENY** the Motion, but expects the parties to address certain questions listed herein at the hearing.

A. Related Cases and Settlement Agreement

This action relates to two other proceedings in this Court – and one case in the United States District Court for the District of Columbia – in which the United States Department of Justice ("DOJ") sought forfeiture of property held for the benefit of the Second Vice President of Equatorial Guinea, Teodoro Nguema Obiang Mangue ("Nguema"), based on various corruption charges. *See generally United States v. One Michael Jackson Signed Thriller Jacket & other Michael Jackson Memorabilia, et al.*, No. CV-13-9169 (C.D. Cal. Dec. 12, 2013) ("Thriller Jacket Case");[1] *United States v. One White Crystal Covered "Bad" Tour Glove et al.*, No. 2:11-cv-03582, (C.D. Cal. Apr. 28, 2011) ("Glove Case"); *United States v. One Gulfstream G-V Jet Aircraft et al.*, No. 1:11-cv-1874, (D.D.C. Oct. 25, 2011) ("Gulfstream Case"). Nguema is the principal of

---

[1] Defendants request the Court take judicial notice of various documents filed in the Thriller Jacket, Glove, and Gulfstream Cases. *See* Request for Judicial Notice, Docket No. 19. Sweetwater does not oppose the request. Because all of the documents are on file in federal court and their accuracy is not in dispute, the Court would grant the Request for Judicial Notice.

1

Sweetwater.[2]  Complaint ¶ 10.

As relevant to the current action, in the Thriller Jacket Case, the DOJ brought an in rem forfeiture lawsuit against certain items of real and personal property including an estate located at 3620 Sweetwater Mesa Road in Malibu, California (the "Property") where title was in Sweetwater's name.  *Id.*  On January 23, 2014, Nguema, for and on behalf of Sweetwater, filed a verified claim and statement of interest in the property.  *See* Thriller Jacket Case, Docket No. 16.  In October 2014, Nguema and Sweetwater (plus another Nguema-controlled entity, Ebony Shine International, Ltd.) entered into a Stipulation and Settlement Agreement with the DOJ to resolve the Thriller Jacket, Glove, and Gulfstream Cases ("Settlement Agreement").  *See* Settlement Agreement, Declaration of Andrew J. Weisberg ("Weisberg Decl."), Exhibit 2, Docket No. 18-1.  Nguema and Sweetwater represented in the Settlement Agreement that Sweetwater was the owner of the Property and had legal right to transfer the Property without consent or approval of any third party.  *See id.* ¶ 2.  To resolve the claims against them, Nguema and Sweetwater agreed to liquidate the Property for fair market value ("FMV"), as that term is defined pursuant to California Code of Civil Procedure Section 1263.320, and consistently with the terms of the Settlement Agreement.  *Id.* ¶¶ 5-6.

The Settlement Agreement set out the process by which the parties would liquidate the Property and provided how the liquidated funds would be distributed.  Within thirty days of the Settlement Agreement, Nguema and Sweetwater were to retain a real estate agent licensed by the California Bureau of Real Estate ("Licensed Agent"), jointly selected with the DOJ, to sell the Property.  *Id.* ¶¶ 7-8.  Any Licensed Agent chosen was required to "review and comply with the provisions of this Settlement Agreement."  *Id.* ¶ 8.  The Settlement Agreement also required the parties to select a real estate appraiser to establish the FMV.  *Id.* ¶ 9.  During the sale process, Sweetwater and Nguema agreed not to take any action that would adversely affect the marketability of the Property and committed to bear the costs for maintenance and repair of the Property until its sale.  *Id.* ¶¶ 15-16.

As to distribution of the liquidated funds, the Settlement Agreement provided that $10,300,000 of the funds would be forfeited to the United States.  *Id.* ¶ 27(b).  The remaining funds

---

[2] Sweetwater uses "Nguema" to denote its principal's last name, whereas Defendants use "Obiang."  The Court will follow Sweetwater's naming convention.  The Court also notes that Nguema is now the Vice President of Equatorial Guinea rather than the Second Vice President.  *See* Complaint ¶ 10.

would be distributed to a charity jointly-selected by the DOJ and Nguema. *Id.* ¶¶ 26, 27(c). The remaining funds would only be disbursed to the jointly-selected charity on the condition that the funds be used for the benefit of the people of Equatorial Guinea. *Id.* ¶ 26. Sweetwater and Nguema further agreed that the funds for the charity would be free and clear of any claim from the parties, and that the funds could not be used to make any payments or provide any form of consideration to the government of Equatorial Guinea, its employees (including Nguema), family members, business associates, or other entities related to the government or its officials. *Id.* ¶¶ 29, 31.

B.  Factual Allegations[3]

Pursuant to the Settlement Agreement, in 2015, Sweetwater hired Defendants as the Licensed Agent to sell the Property and entered into the "Listing Agreement" with Defendants. *See* Complaint ¶ 19.[4] UMRO Realty Corp. is a California real estate agency that does business as The Agency. *Id.* ¶ 12. Umansky is the founder and CEO of UMRO Realty Corp. and is a real estate broker licensed by the California Department of Real Estate. *Id.* ¶¶ 11-12. Defendants are high-end real estate brokers that hold themselves out as the "preeminent player in the luxury real estate market, representing many of the country's most visible and high-end properties." *Id.* ¶ 18. Umansky touts himself "as the #3 top-producing real estate agent in the U.S. and #1 in California," having sold the most homes in the country above $20 million. *Id.* He is also married to one of the "Beverly Hills Housewives," and appears on the show. *Id.*

Sweetwater claims that it had sole discretion to agree to any sale of the Property over $32 million.[5] *Id.* ¶ 19. According to the Complaint, Defendants presented offers from several potential buyers to Sweetwater. *Id.* ¶ 20. All of the initial offers were between $32 and $33.5 million. *Id.* At Defendants' recommendation, Sweetwater countered to all of the offerors at $33.5 million. *Id.* ¶ 21. Of those potential buyers that accepted, Defendants pressed Sweetwater to proceed with one

---

[3] Because this is a motion to dismiss, Sweetwater's factual allegations are presumed true. Defendants provide their own factual narrative, without citation to any judicially noticeable documents, that the Court must ignore at this stage. *See* Motion at 6.

[4] In the Listing Agreement, Defendants agreed to comply with the Settlement Agreement. *See* Complaint ¶ 34. The Listing Agreement further imposed on Defendants, among other things, (i) a duty to present to Sweetwater any and all offers for the property, (ii) a duty to use reasonable care and due diligence in carrying out the agreement, (iii) a duty to disclose all facts affecting the value or desirability of the property, (iv) fiduciary duties of the utmost care, honesty, integrity and loyalty, and (v) a duty to disclose any and all financial and other arrangements with the buyer in the case of a dual agency. *Id.* ¶ 53.

[5] Sweetwater states in its Opp'n that it "had sole discretion to agree to any sale over an appraised value of $32.5 million." Opp'n at 6. Defendants claim that the appraiser retained pursuant to the Settlement Agreement valued the Property at $32 million. Motion at 5.

3

of Defendants' clients, Mauricio Oberfeld, instead of a non-client. *Id.* Despite making an "as is" cash offer, Oberfeld did not have the necessary funds and was seeking a loan and investors, or another buyer to whom Oberfeld could flip the Property. *Id.* ¶ 22. Defendants knew that Oberfeld did not have all of the funds, yet presented the offer as not relying on third-party financing. *Id.* Despite the representation, Defendants were actually helping Oberfeld find investors and buyers, and received offers to pay millions more for the Property. *Id.* ¶ 24. Defendants informed Oberfeld of these offers but not Sweetwater. *Id.* ¶ 24. Specifically, on December 23, Umansky wrote to Oberfeld to tell him that he had been picked, but also told him that he had someone that might take the Property off their hands and that he had pitched it for $42 million. *Id.* ¶ 25. In February 2016, Defendants received an offer from another buyer for $8 million over the offer from Oberfeld, "with 4% million [sic] payable to Umansky as a commission." *Id.* ¶ 26. Defendants presented the offer to Oberfeld but not Sweetwater. *Id.*

In April 2016, Defendants were still helping Oberfeld find investors or buyers so that he could complete the purchase of the Property. *Id.* ¶ 29. Despite having agreed to buy the Property "as is," Oberfeld requested a $1 million credit for repairs, and Defendants failed to tell Sweetwater that it could deny the request. *Id.*[6] Two weeks before the close of the deal, Umansky wrote the DOJ to inform the government that Oberfeld had just "invited me to invest with him" and "to express my intention of making an investment with Mauricio Oberfeld into the deal." *Id.* ¶ 30. Three days later, Umansky informed Sweetwater of the same. *Id.*

In mid-2017, Oberfeld and Umansky resold the Property for $69.9 million. *Id.* ¶ 31. To date, Nguema and the DOJ have not jointly selected a charity to receive the funds from the sale of the Property. *See* Opp'n at 10.

**II.     Legal Standard**

    A.  <u>12(b)(1)</u>

Federal Rule of Civil Procedure ("Rule") 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Challenges to standing and mootness are appropriately considered under Rule 12(b)(1) motions. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that plaintiffs have standing and that claims be 'ripe'

---

[6] Sweetwater notes that the DOJ has taken the position that Sweetwater is liable for the $1 million. *Id.* ¶ 29.

4

for adjudication.").

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). In a facial attack on jurisdiction, the nonmoving party is not required to present evidence outside the pleadings; and the allegations of plaintiff's complaint are taken as true. *Id.* As always, the party asserting that a court has subject matter jurisdiction bears the burden of demonstrating as much. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *See Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted). The moving party may "convert[] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court . . . ." *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). As a general matter, a district court deciding a factual attack on jurisdiction "need not presume the truthfulness of the plaintiffs' allegations" and may "look beyond the complaint . . . without having to convert the motion into one for summary judgment." *United States ex rel Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 n.2 (9th Cir. 2009) (citation omitted), *overruled on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015).

B.  12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as

true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a Rule 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged − but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

Rule 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, "[e]ach allegation must be simple, concise, and direct. No technical form is required." Rule 8(d)(1).

If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

### III. Discussion

#### A. Standing[7]

" 'The irreducible constitutional minimum of standing contains three elements,' all of which the party invoking federal jurisdiction bears the burden of establishing." *Chandler*, 598 F.3d at 1122 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The three elements are: 1) the plaintiff must have suffered an "injury in fact," which is concrete and particularized and actual or imminent; 2) there must be a causal connection between the injury and the conduct complained of – *i.e.*, the injury must be fairly traceable to the action of the defendant; and 3) it must be likely that the injury would be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

This case concerns the injury in fact element. "To establish injury in fact, a plaintiff must

---

[7] Defendants do not purport to make a factual challenge to Sweetwater's standing. *See* Motion at 8 (noting that courts must defer to a plaintiff's allegations).

show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (quoting *Lujan*, 504 U.S., at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotations omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)).

### 1. *Forfeiture of Interest in Sweetwater Property*

Defendants first argue that Sweetwater lacks standing because it forfeited its interest in the Property and all proceeds from a sale, and therefore suffered no injury-in-fact. *See* Motion at 10-13. Sweetwater responds that Defendants misconstrue the Settlement Agreement and that Sweetwater did not forfeit its interest in the property. *See* Opp'n at 9-11.

Sweetwater is correct that the Settlement Agreement did not technically lead to a "forfeiture" of the Property. Instead, the Settlement Agreement forced the liquidation of the Property, with $10,300,000 of the proceeds forfeited, and the remainder distributed to a charity jointly-selected by the Government and Nguema for the benefit of the people of Equatorial Guinea. *See* Settlement Agreement ¶¶ 26-27. But, ignoring semantics, the fact of the matter is that Nguema and Sweetwater would not have received any additional proceeds if Defendants had sold the Property for more. In other words, Sweetwater did not retain any *direct personal* financial interest in the Property. Nor does Sweetwater even really argue that it suffered *financial* damage on account of the allegedly under-market sale. *See* Opp'n at 12-13 (arguing that Sweetwater suffered tangible harm only from the $1 million repair credit; an argument the Court will address below).

As such, the Court is inclined to agree that Sweetwater does not have standing based on any alleged financial harm to itself. Defendants' cited forfeiture cases are instructive. In *United States v. $14,344.50 in U.S. Currency*, 49 F. App'x 207 (10th Cir. 2002), the appellant lacked standing to contest a forfeiture action because he had entered into a plea agreement "forfeit[ing] to the United States all of his right, title, and interest in the cash and weapons found during" a police search of his home. *See id.* at 208 (internal quotation marks omitted). In the unpublished opinion, the Tenth Circuit reasoned that "whatever interest [appellant] once had in the currency, he relinquished in his plea agreement. This court has recognized that defendants can surrender their claims to seized property by assenting to forfeiture provisions included in plea agreements." *Id.* Likewise, in *United States v. Grover*, 119 F. 3d 850 (10th Cir. 1997), Grover pled guilty to

7

criminal charges and entered into a forfeiture agreement with the government whereby Grover

> [A]greed to sell his residence in Aspen, Colorado, and turn over a portion of the proceeds to the government.  In return, the government agreed not to seek forfeiture of other property, including a residence in Honolulu, Hawaii, and a business known as Lounge Lizards, Inc.  Also that same day, Mr. Grover and the government executed an "Addendum to the Forfeiture Agreement," in which Mr. Grover agreed to surrender the proceeds of his property sale to the government "for the purpose of bringing a civil narcotics forfeiture action against those proceeds" under 21 U.S.C. § 881, and not to contest the forfeiture.

*Id.* at 851.  When the government never initiated a civil forfeiture against the proceeds of the sale, Grover contested the forfeiture.  *Id.* at 852.  Nevertheless, the Tenth Circuit ruled that he could not challenge the forfeiture because he had relinquished any claim he had to the property as part of the forfeiture agreement.

Sweetwater attempts to distinguish *Grover* and the other forfeiture cases as only applying to Federal Rule of Criminal Procedure 41(g)[8] motions for persons aggrieved by an unlawful search and seizure of property.  However, the cases stand for the broader point that a party who agrees to relinquish an interest in property may not later challenge the forfeiture of that property.

Here, Sweetwater cannot assert that it retains a financial interest *in the Property* because it relinquished any such claim in the Settlement Agreement.  *See* Settlement Agreement ¶ 27 (describing how the funds from the liquidation sale would be distributed); ¶ 29 ("The funds received by the Charity . . . shall be free and clear of any and all claims of any kind or nature by Sweetwater . . ."); ¶ 31 (agreeing that the funds provided to the charity would not be used to benefit Nguema, the government of Equatorial Guinea, or any officials or family members of the government).  Even if Defendants had found a buyer for the Property willing to spend $100 million, none of the excess funds would have gone to Sweetwater or Nguema.[9]

### 2. $1 Million Repair Credit

---

[8] Sweetwater cites Federal Rule of Criminal Procedure 41(e), which is where 41(g) was previously codified.

[9] However, as observed below, that is not to say that Sweetwater's principal (Nguema) would not have a say as to where the excess funds would eventually go.  Moreover, as also discussed below, Plaintiff has alleged that the Defendants engaged in the breach of fiduciary duty, fraud and statutory violations in the context of a Listing Agreement between the Plaintiff and Defendants which in turn obligated the Defendants to comply with the terms of the Settlement Agreement.  *See* ¶ 19 of the Complaint.  It cannot be seriously argued that, assuming Plaintiff's allegations of Defendants' misconduct are true, that they are entitled to keep the purported ill-gotten gains because of Sweetwater's lack of standing to object to Defendants' wrongdoing.

Separate from any generalized financial interest in the sale of the Property, Sweetwater contends that it did suffer tangible financial harm in the form of the $1 million repair credit that it applied against the sale price to Oberfeld. *See* Opp'n at 12-13. Specifically, Sweetwater argues that "Defendants induced Sweetwater to accept [the repair credit] by its intentional fraud and breaches of statutory, contractual and fiduciary duties." *Id.* at 12. Sweetwater continues that although the United States considers Sweetwater liable for the $1 million repair credit, the claim has not been adjudicated and therefore Sweetwater will have to expend time and resources to litigate this claim.[10] Defendants contend that the repair credit did not injure Sweetwater because "[t]he credit reduced the sales price by $1 million and Plaintiff had relinquished any interest in the Sale Proceeds." Motion at 15. Further, Defendants assert that, pursuant to the Settlement Agreement, Sweetwater would need to seek reimbursement from the DOJ for the $1 million repair credit. *See* Reply at 5-6 (citing Settlement Agreement ¶¶ 16-17).

The Court does not see how this $1 million repair credit is a direct financial harm. Sweetwater did not pay anybody $1 million out-of-pocket. The repair credit instead reduced the purchasing price of the house by $1 million. But, as discussed above, no matter how much the Property sold for, Sweetwater and Nguema would not have received any funds.

### 3. Ability to Jointly Select Charity to Receive Excess Funds

While the Court agrees with Defendants that Sweetwater does not have a personal financial interest in the sale amount, the Court thinks that the focus on direct financial harm is too narrow for standing purposes. It cannot be disputed that Nguema retained some *say* in how the funds from the sale of the Property would be distributed to a jointly-selected charity. In the Settlement Agreement, Sweetwater and Nguema bargained for the ability to jointly pick a charity that would distribute the funds for the benefit of the people of Equatorial Guinea. For all the Court knows, the parties may not have settled without the ability to decide, at least in part, how any excess money would be spent. It follows that any reduction in the sale price of the Property because of Defendants' self-dealing at least had that effect on Sweetwater and Nguema. In other words, Sweetwater and Nguema lost the ability to give a jointly-selected charity *more money*. As an initial matter, the Court thinks that losing the opportunity to give more money to a charity is particularized in that it affects Plaintiff directly because it retained a contractual right to jointly

---

[10] The Court ponders why the United States is not involved in this action and whether it must be included as a necessary party; and likewise as to Nguema himself as an individual.

9

select a charity to receive the funds. It is also a concrete harm in that giving a charity several million dollars fewer than Sweetwater/Nguema would have been able to give if Defendants had acted properly is a real injury.

The fact that Plaintiff would have some say in how the proceeds would be disbursed after the sale also distinguishes this case from Defendants' cited forfeiture cases. In those cases, the various plaintiffs did not retain any right to dictate how the money from the forfeiture of their property would be spent. The Court considers this significant. Sweetwater does not make its argument exactly how the Court characterizes the issue above, but does state that "Sweetwater also was deprived of benefits under the Settlement Agreement that Defendants were obligated to provide, including fair market value for the Property, honest services and advice, and *additional proceeds it could have used to benefit the people of his country*." Opp'n at 12 (emphasis added).[11]

As such, the Court would conclude that alleged sale of the Property for less than Sweetwater should have received represents an injury in fact for standing purposes because it affected the amount of money that Nguema could apportion to a charity jointly-selected with the DOJ. As stated above, however, the Court does have questions about whether the United States and Nguema need to be involved in this action and whether that consideration has any bearing on the standing issue. The parties should address these questions at the hearing.

### 4. "De Facto" Contractual Standing

Although the Court would be inclined to base standing on the alleged reduction of funds that Nguema would be able to designate to charity, it will address some of the remaining arguments to provide guidance for the parties. Sweetwater's primary argument in favor of standing is that its "status as contracting party with Defendants gives it *de facto* standing to sue for the deprivation of contractual rights, regardless of whether it also suffered additional intangible or tangible monetary loss as a result."[12] Opp'n at 11. Thus, Sweetwater seems to assert that because it alleged that Defendants breached contractual rights, Sweetwater automatically has standing without a further

---

[11] The Court agrees with Defendants that Plaintiff's cited case − *Sprint Communications Co. L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008 − is not wholly relevant. That case dealt specifically with "suits by individuals who were assignees for collection only, *i.e.*, assignees who brought suit to collect money owed to their assignors but who promised to turn over to those assignors the proceeds secured through litigation." *Id.* at 280. Here, there is no allegation that Sweetwater is anyone's assignee. Similarly, at this point, Sweetwater has not established that it is in such a close relationship with the "people of Equatorial Guinea who are designated as ultimate beneficiaries of any proceeds," to garner standing. *See* Opp'n at 16.

[12] Although Defendants are not signatories to the Settlement Agreement, the agreement contemplates their involvement as the hired Licensed Agent. *See* Settlement Agreement ¶ 8.

10

showing of harm. *Id.* Defendants respond that each of Sweetwater's cited cases allege a "specific 'concrete and particularized' financial harm." Reply at 7-8.[13]

Sweetwater provides the court with a string cite to various breach of contract cases without really describing any of the issues involved. *See* Opp'n at 11. For example, Sweetwater cites *North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 193 (5th Cir. 2015) ("*North Cypress*"), for its general contention that an alleged deprivation of contractual rights is alone sufficient to establish standing, but does not quote from or explain anything about the case. In *North Cypress*, a hospital sued the insurer Cigna for breach of healthcare plans in violation of ERISA. *See id.* at 186, 191. Patients insured by Cigna would generally assign their rights under their insurance plans to the hospital, meaning that the hospital itself would seek payment for treatment from Cigna. *Id.* at 187-88. The hospital alleged that Cigna began reimbursing the hospital at drastically reduced rates because the hospital was giving patients discounts on their co-insurance obligations. *Id.* at 189. Cigna moved to dismiss for want of standing and the district court granted the motion. *Id.* "Healthcare providers may not sue in their own right to collect benefits under an ERISA plan, but may bring ERISA suits standing in the shoes of their patients." *Id.* at 191 (footnote omitted). Nevertheless, Cigna argued that the patients – and therefore the hospital – did not have standing to sue because they were never at imminent risk of out-of-pocket expenses. *Id.* at 192. The Fifth Circuit rejected Cigna's argument and concluded that the hospital had standing to sue based on the patients' assignments of their contractual rights. *Id.* at 192-93. The court reasoned that at the time they assigned their contractual rights to the hospital, patients "had the legal right to seek payment directly from the Plans for charges by non-network health care providers. If the beneficiaries had sought payment directly from their Plans for treatment provided by [the provider], and if payment had been refused, they would have had an unquestioned right to bring suit for benefits." *Id.* at 192 (quoting *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014)). The court continued, "[t]here is more: a patient suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless of whether she has directed the money be

---

[13] Sweetwater's complaint does not seek nominal damages, but that may be one possible avenue to contractual standing. *See In re Facebook Privacy Litig.*, 192 F.Supp.3d 1053, 1060-62 (N.D. Cal. 2016) (holding that plaintiffs established injury in fact through a breach of contract claim for nominal damages but noting that not all courts agree that nominal damages may provide standing). In Reply, Defendants contest that nominal damages would be available to Sweetwater or that they confer standing. Because Sweetwater did not seek nominal damages, the Court need not decide the issue at this time.

11

paid to a third party for her convenience." *Id.* at 193. *North Cypress* therefore does not stand for the premise that an alleged violation of contractual rights without any injury provides de facto standing. If anything, *North Cypress* is a case about who suffers a concrete injury based on a contract and when. Without any guidance from Sweetwater as to the applicability of *North Cypress*, the Court does not see how it helps their cause.

However, Sweetwater also quotes *Katz v. Pershing, LLC*, 672 F.3d, 72 (1st Cir. 2012), in support of its argument that an alleged breach of contract is alone enough for standing: "We think the better view is that when a plaintiff generally alleges the existence of a contract, express or implied, and a concomitant breach of that contract, her pleading adequately shows an injury to her rights." *Katz*'s statement was in contrast to the district court's determination that plaintiff lacked standing to bring contract claims because the plaintiff did not have a contract with defendant. *Id.* And, while this broad pronouncement sounds helpful to Sweetwater, *Katz* does not contemplate that the plaintiff suffered no direct harm. As such, it is not directly on point.

Sweetwater also relies on Justice Thomas's concurrence in *Spokeo* to argue that a when a party alleges a violation of its contractual rights, it need not show any actual injury. *See* Opp'n at 11-12 (citing *Spokeo*, 136 U.S. at 1552 (Thomas, J., concurring)). Thomas's concurrence distinguishes between so-called public rights where a plaintiff must show some actual injury and private rights where the plaintiff is not required to assert an actual injury. *Id.* An alleged breach of contract would fall under private rights, meaning a plaintiff would have standing without any further allegations. *Id.* The problem for Sweetwater is that Thomas's concurrence does not seem to represent the actual state of the law. *See Frank v. Gaos*, 139 S. Ct. 1041, 1046-47 (2019) (Thomas, J., dissenting) ("Respectfully, I would reach the merits and reverse. As I have previously explained, a plaintiff seeking to vindicate a private right need only allege an invasion of that right to establish standing.") (citing *Spokeo*, 136 U.S. at 1553 (Thomas, J., concurring)).

In short, the parties don't cite any cases that are determinative one way or the other. The Court notes, however, that it would find it strange that Sweetwater could enter into the Listing Agreement and Settlement Agreement and then not have standing to enforce the terms of those contracts. The language of the agreements belie that the parties envisioned not being able to bring suit based on the contracts. For example, Paragraph 47 of the Settlement Agreement provides that the parties "do not waive their rights to enforce the terms of this Settlement Agreement, which rights are expressly retained." Moreover, Sweetwater and Defendants entered into the Listing

12

Agreement, which incorporated the Settlement Agreement.

If Sweetwater does not have standing to sue for breach of those contracts because they will not directly receive any funds from the liquidation, does that mean that Sweetwater could never enforce any of the contracts?[14] It seems that if that were the case, large portions of the contracts would be superfluous. It would also mean that Defendants had carte blanche to breach the contracts willy-nilly with no chance that Sweetwater or Nguema could sue. Defendants have not addressed this argument head on.

As such, the structure and intent of the Listing and Settlement Agreements support the Court's inclination that Sweetwater has standing to assert its claims.

### 5. *Intangible Harm*

Sweetwater contends that Nguema, its sole owner, would suffer the loss of intangible benefits "including . . . the impact on his reputation, and personal satisfaction in improving the lives of the people of his country." Opp'n at 14. As discussed above, the Court would find that there is a cognizable interest in maximizing the amount of funds to be designated to the jointly-selected charity. However, Sweetwater provides no relevant precedent that harm to reputation or personal satisfaction are the type of concrete injury required for standing. Sweetwater would need to be more specific. Further, as alluded to above, the focus on Nguema's injury begs the question of which people and entities should be party to this action.

### B. Waiver of Claims

Lastly, Defendants argue that the Court should dismiss Sweetwater's claims because it is bound by a covenant not to sue. *See* Motion at 16-17.[15] Specifically, Defendants lean on Paragraph

---

[14] In *Sisley v. Sprint Communs. Co., L.P.*, 284 Fed. Appx. 463 (9th Cir. 2008) (which this Court recognizes is not precedential), the plaintiff could not delineate any actual financial injury from defendant's alleged breach of contract but merely pointed to the between four and six hours her fiancé had to spend remedy the effects of the breach. The Circuit stated that her "alleged injury strikes us as dubious." *Id.* at 466. However, the court went on to state that:

> We have recognized, at least in certain circumstances, that lost time and income spent dealing with wrongful conduct can constitute a cognizable injury in fact. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001). In addition, at the pleading stage, "we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted); *see also Bernhardt*, 279 F.3d at 869. Therefore, based on the stage of the pleadings and our precedent, we cannot say that Sisley lacks a cognizable injury in fact. Because such an injury is redressable by money damages, Sisley has sufficiently alleged the elements of standing.

*Id.*

[15] Defendants also make a cursory argument that all of Plaintiffs claims should be dismissed for failure to allege damages. *See* Motion at 8; Reply at 14. At this stage of the litigation, and accepting all allegations as true, the

40 of the Settlement Agreement, which provides that the parties "will not seek, through any court proceeding or other process, the return of the Defendant Res or any proceeds as a result of the liquidation of the Defendant Res except as otherwise provided herein." Defendants also argue that Sweetwater waived all claims against Defendants via Paragraph 42, which provides that Sweetwater and Nguema:

> [H]ereby agree to forever discharge and hold harmless the United States, and any and all officers, agents, representatives, attorneys, and employees of same, including all federal, state, and local enforcement officers, from all claims, liabilities, obligations, appeals, or demands, including attorneys fees, in connection with or arising from the Thriller Jacket Case, the Glove Case and the Gulfstream Case or any allegations contained therein.

Sweetwater responds that the Settlement Agreement could not have "prospectively protected [Defendants] from any claim for violating that very agreement or the Listing Agreement they subsequently entered into with Sweetwater as required by the Settlement Agreement." Opp'n at 17. Sweetwater also argues that even if the Settlement Agreement is interpreted as a release, it would be void under California contract law. *Id.* at 18.

At this stage in the proceedings, and making all reasonable inferences in favor of Sweetwater, the Court would deny Defendants' Motion on this ground. First, Paragraph 40 is not obviously applicable to this situation. In part, Plaintiff is asserting rights under the Settlement Agreement, which Paragraph 47 specifically envisions: "the Parties do not waive their rights to enforce the terms of this Settlement Agreement, which rights are expressly retained." Paragraph 40, in light of Paragraph 47, could easily be read to apply to only situations where Sweetwater was attempting to directly receive proceeds from the sale in another court. Next, Paragraph 42 only applies to the United States and its agents, assignees, etc. The Court thinks that it would be a question of fact as to whether Defendants were agents of the United States by virtue of being the Licensed Agent to sell the Property. As Sweetwater points out, Sweetwater was the party to hire Defendants.

---

Court would deny Defendants' Motion on this ground. Plaintiff alleges that Defendants breached various agreements and duties owed to Plaintiff. Just because Sweetwater was not going to receive additional funds from the sale, that does not necessarily mean that it is not entitled to other damages to be proven later.

The Court also notes that Defendants request that the Court dismiss Plaintiff's claims with prejudice. Even if the Court were inclined to grant Defendant's Motion – and it is not – it would do so while giving Sweetwater leave to file an amended complaint.

Therefore, the Court would deny Defendants' motion as to Sweetwater's purported waiver of claims.

### IV. Conclusion

Based on the foregoing discussion, the Court would **DENY** the Motion.