UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-1848-GW-SSx | Date | September 9, 2019 |
| Title | *Sweetwater Malibu CA, LLC v. Mauricio Umansky, et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Anne Kielwasser | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Julian Brew | David L. Kirman |

**PROCEEDINGS:** **EFENDANTS MAURICIO UMANSKY AND UMRO REALTY CORP.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) [34]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would DENY in part and GRANT in part Defendants' Second Motion to Dismiss. The Court would grant the motion as to the statutory violations cause of action, as well as to the fraud and negligent misrepresentation causes of action to the extent those rely on affirmative misrepresentations. The Court would deny the motion as to the remaining claims. The Court would allow Plaintiffs an opportunity to replead the claims dismissed herein.

|  | : | 04 |
|---|---|---|
|  | Initials of Preparer | JG |

<u>*Sweetwater Malibu CA, LLC v. Umansky et al*</u>; Case No. 2:19-cv-01848-GW-(SSx)
Tentative Ruling on Motion to Dismiss the First Amended Complaint

I. **Background**

Plaintiffs Sweetwater Malibu CA, LLC, formerly known as Sweetwater Malibu, LLC (collectively, "Sweetwater") and Teodoro Nguema Obiang Mangue ("Nguema" and collectively with Sweetwater "Defendants") sue Mauricio Umansky and UMRO Realty Corp. ("Defendants") for (1) breach of settlement agreement and order, (2) breach of fiduciary duties, (3) violations of California statutes governing licensed real estate brokers, (4) breach of listing agreement, (5) intentional fraud, (6) negligent misrepresentation, and (7) negligence and negligence per se. *See generally* First Amended Complaint ("FAC"), Docket No. 33.

Defendants previously moved to dismiss Sweetwater's initial complaint arguing, in general, that Sweetwater lacked standing to assert its claims and that Sweetwater waived its right to sue under a prior settlement agreement. *See generally* Motion to Dismiss ("First MTD"), Docket No. 18. The Court essentially rejected Defendants' arguments, but agreed that Sweetwater must replead its allegations to add Nguema as a party. *See* July 1, 2019 Minutes of First MTD Hearing ("First MTD Ruling"), Docket No. 32, at 3-4. As such, the Court granted the First MTD and gave Plaintiffs two weeks to file an amended complaint. *See generally id.*

Now Defendants move to dismiss all of Plaintiffs' claims in the FAC. *See generally* Motion to Dismiss FAC ("Second MTD"), Docket No. 34. Plaintiffs oppose. *See* Opposition to Second MTD ("Second Opp'n"), Docket No. 36. Defendants filed a reply. *See* Reply in Support of Second MTD ("Second Reply"), Docket No. 38.

A. <u>Related Cases and Settlement Agreement</u>

This action relates to two other proceedings before this Court plus one case in the United States District Court for the District of Columbia where the United States Department of Justice ("DOJ") sought forfeiture of property held for the benefit of Nguema, the Second Vice President of Equatorial Guinea, based on various corruption charges. *See United States v. One Michael Jackson Signed Thriller Jacket & other Michael Jackson Memorabilia, et al.*, No. CV 13-9169 (C.D. Cal. Dec. 12, 2013) ("Thriller Jacket Case"); *United States v. One White Crystal Covered "Bad" Tour Glove et al.*, No. 2:11-cv-03582, (C.D. Cal. Apr. 28, 2011) ("Glove Case"); *United States v. One Gulfstream G-V Jet Aircraft et al.*, No. 1:11-cv-1874, (D.D.C. Oct. 25, 2011)

1

("Gulfstream Case").[1]

As relevant to the current action, in the Thriller Jacket Case, the DOJ sought the forfeiture of an estate located at 3620 Sweetwater Mesa Road in Malibu, California (the "Property") that Sweetwater owned. *See* FAC ¶¶ 10, 14. In October 2014, Nguema and Sweetwater[2] entered into a Stipulation and Settlement Agreement with the DOJ to resolve the Thriller Jacket, Glove, and Gulfstream Cases ("Settlement Agreement"). *Id.* ¶ 14.[3] The Settlement Agreement required the sale of the Property with the proceeds to be distributed in accordance with the Settlement Agreement. *Id.*

The Settlement Agreement set out the process by which the parties would liquidate the Property and provided how the liquidated funds would be distributed. Within thirty days of the Settlement Agreement, Nguema and Sweetwater were to retain a real estate agent licensed by the California Bureau of Real Estate ("Licensed Agent"), jointly selected with the DOJ, to sell the Property. Settlement Agreement ¶¶ 7-8. Any Licensed Agent chosen was required to "review and comply with the provisions of this Settlement Agreement." *Id.* ¶ 8. The Settlement Agreement also required the parties to select a real estate appraiser to establish the Fair Market Value ("FMV") of the Property. *Id.* ¶ 9. During the sale process, Sweetwater and Nguema agreed not to take any action that would adversely affect the marketability of the Property and committed to bear the costs for maintenance and repair of the Property until its sale. *Id.* ¶¶ 15-16.

As to distribution of the liquidated funds, the Settlement Agreement provided that $10,300,000 of the funds would be forfeited to the United States. *Id.* ¶ 27(b). The remaining funds would be distributed to a charity jointly-selected by the DOJ and Nguema. *Id.* ¶¶ 26, 27(c). The remaining funds would only be disbursed to the jointly-selected charity on the condition that the funds be used for the benefit of the people of Equatorial Guinea. *Id.* ¶ 26. Sweetwater and Nguema further agreed that the funds for the charity would be free and clear of any claim from the parties, and that the funds could not be used to make any payments or provide any form of consideration to the government of Equatorial Guinea, its employees (including Nguema), family members,

---

[1] In the First MTD Ruling, the Court consolidated the instant action with the Thriller Jacket and Glove Cases for pretrial purposes only. *See* First MTD Ruling.

[2] Also involved in that settlement was another Nguema-controlled entity, *i.e.* Ebony Shine International, Ltd.

[3] The Court previously took judicial notice of the Settlement Agreement document and, because both parties refer to the document in their briefing on the current motion, the Court will do so again. *See* Settlement Agreement, Declaration of Andrew J. Weisberg, Exhibit 2, Docket No. 18-1.

business associates, or other entities related to the government or its officials. *Id.* ¶¶ 29, 31.

    B. Factual Allegations

Pursuant to the Settlement Agreement, in 2015, Sweetwater hired Defendants as the Licensed Agent to sell the Property and entered into the "Listing Agreement" with Defendants. *See* FAC ¶ 19.[4] UMRO Realty Corp. is a California real estate agency that does business as "The Agency." *Id.* ¶ 12. Umansky is the founder and CEO of UMRO Realty Corp. and is a real estate broker licensed by the California Department of Real Estate. *Id.* ¶¶ 11-12. Defendants are high-end real estate brokers that hold themselves out as the "preeminent player in the luxury real estate market, representing many of the country's most visible and high-end properties." *Id.* ¶ 18. Umansky touts himself "as the #3 top-producing real estate agent in the U.S. and #1 in California," having sold the most homes in the country above $20 million. *Id.* He is also married to one of the "Beverly Hills Housewives," and appears on the show. *Id.*

Sweetwater claims that it had sole discretion to agree to any sale of the Property over $32 million.[5] *Id.* ¶ 19. After entering into the Listing Agreement with Plaintiffs, Defendants presented offers from several potential buyers to Sweetwater. *Id.* ¶ 20. Most of the potential buyers were also Defendants' clients. *Id.* All of the initial offers were between $32 and $33.5 million. *Id.* At Defendants' recommendation, Sweetwater countered to all of the offerors at $33.5 million. *Id.* ¶ 21. Of those potential buyers that accepted, Defendants pressed Plaintiffs to proceed with one of Defendants' clients, Mauricio Oberfeld, instead of a non-client. *Id.* Despite making an "as is" cash offer, Oberfeld did not have the necessary funds and was seeking a loan and investors, or another buyer to whom Oberfeld could flip the Property. *Id.* ¶ 22. Defendants knew that Oberfeld did not have all of the funds, yet presented the offer as not relying on third-party financing. *Id.* Despite the representation, Defendants were actually helping Oberfeld find investors and buyers, and received offers to pay millions more for the Property. *Id.* ¶ 24. Defendants informed Oberfeld of these offers but not Sweetwater. *Id.* ¶ 24. Specifically, on December 23, Umansky wrote to

---

[4] In the Listing Agreement, Defendants agreed to comply with the Settlement Agreement. *See* FAC ¶ 19. The Listing Agreement further imposed on Defendants, among other things, (i) a duty to present to Sweetwater any and all offers for the property, (ii) a duty to use reasonable care and due diligence in carrying out the agreement, (iii) a duty to disclose all facts affecting the value or desirability of the property, (iv) fiduciary duties of the utmost care, honesty, integrity and loyalty, and (v) a duty to disclose any and all financial and other arrangements with the buyer in the case of a dual agency. *Id.* ¶ 55.

[5] Sweetwater states in its Opp'n that it "had sole discretion to agree to any sale over an appraised value of $32.5 million." Second Opp'n at 4. Defendants claim that the appraiser retained pursuant to the Settlement Agreement valued the Property at $32 million. Second MTD at 5.

3

Oberfeld to tell him that he had been picked, but also told him that he had someone that might take the Property off their hands and that he had pitched it for $42 million. *Id.* ¶ 25. In February 2016, Defendants received an offer from another buyer for $8 million over the offer from Oberfeld, with 4% payable to Umansky as a commission. *Id.* ¶ 26. Umansky forwarded a counter-offer for $15 million with the same 4% commission. *Id.* Defendants presented the offer to Oberfeld but not Sweetwater. *Id.*

In April 2016, Defendants were still helping Oberfeld find investors or buyers so that he could complete the purchase of the Property. *Id.* ¶ 29. Despite having agreed to buy the Property "as is," Oberfeld requested a $1 million credit for repairs, and Defendants failed to tell Sweetwater that it could deny the request. *Id.*[6] Two weeks before the close of the deal, Umansky wrote the DOJ to inform the government that Oberfeld had just "invited me to invest with him" and "to express my intention of making an investment with Mauricio Oberfeld into the deal." *Id.* ¶ 30. Three days later, Umansky informed Sweetwater of the same. *Id.*

In mid-2017, Oberfeld and Umansky resold the Property for $69.9 million. *Id.* ¶ 31.

**II.     Legal Standard**

   A.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

---

[6] Sweetwater notes that the DOJ has taken the position that Sweetwater is liable for the $1 million. *Id.* ¶ 29.

4

Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  A court is not required to accept as true legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where a plaintiff facing a Rule 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied.  *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013).  But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged − but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

Rule 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Additionally, "[e]ach allegation must be simple, concise, and direct.  No technical form is required."  Rule 8(d)(1).

If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

B.  Federal Rule of Civil Procedure 9(b)

"A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. Rule 9(b).  "[The Ninth circuit] has interpreted Rule 9(b) to require that 'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Vess*, 317 F.3d at 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about

5

a statement, and why it is false.'" *Id.* (alteration in original) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011)).

### III. Discussion

#### A. Breach of Contract

Defendants first seek dismissal of Plaintiffs' breach of contract claims, the first and fourth causes of action for alleged breach of the Settlement and Listing Agreements. *See* Second MTD at 4. Under California law, the four elements for a breach of contract claim are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. General Ins. Co.* 68 Cal.2d 822, 830 (1968)). Defendants argue that Plaintiffs have failed to sufficiently allege the third and fourth elements. *See* Second MTD at 4.

##### 1. Breach

As to the breach element, Defendants contend that Plaintiffs allege that the Settlement Agreement imposed two obligations: first for Defendants to "work cooperatively with the United States in the conduct of its activities, including reporting regularly to the United States and providing all requested information promptly to the United States relating to the [property] and its sale," *see* FAC ¶ 16 (alteration in original), and second for the property to "be sold in accordance with the terms of this Settlement Agreement for [FMV], as that term is defined pursuant to California Code of Civil Procedure Section 1263.320, unless a sale at an alternative price is approved in writing by both counsel for the United States and counsel for Nguema, in arm's length transactions . . . ." *see id.* Additionally the Listing Agreement "obligated Defendants to comply with the Settlement Agreement." *Id.* ¶ 19.

Regarding the first obligation, Defendants argue that there is no claim that Defendants failed to provide requested information to the United States. *See* Second MTD at 5; Second Reply at 6. In response, Plaintiffs assert that Defendants mischaracterize the nature of the obligation by focusing on whether the United States requested any information from Defendants. *See* Second Opp'n at 9. Instead, Plaintiffs point out that the Settlement Agreement required Defendants "to work cooperatively with the United States in the conduct of its activities, including reporting regularly to the United States and providing all requested information promptly to the United States relating to the Defendant Real Property and its sale." *See* Settlement Agreement ¶ 8.

6

Plaintiffs further argue that:

> [T]he FAC alleges numerous material facts Defendants either misrepresented or withheld, including the specific written offers for the Property and other information concerning their activities on behalf of the buyer in pursuing a sale at a higher price. Under no reasonable construction would failing to report and misrepresenting this information be construed as working "cooperatively," or "reporting regularly" as the Settlement Agreement required.

Second Opp'n at 9.

Reading the allegations in the FAC in the light most favorable to Plaintiffs, and making all reasonable inferences in their favor, the Court is inclined to conclude that Plaintiffs have sufficiently alleged that Defendants breached paragraph 8 of the Settlement Agreement. In essence, the FAC alleges that Defendants failed to disclose bids higher than the offer eventually accepted and omitted the fact that Defendants had a financial interest in the sale of the Property to Oberfeld. *See* FAC ¶¶ 24-26, 30, 36. By complaining that Defendants withheld information about its financial stake in the sale and that Defendants failed to tell the United States about higher bids than the offer accepted, Plaintiffs have plausibly alleged that Defendants failed to "work cooperatively" with and did not "report regularly to the United States." *See* Settlement Agreement ¶ 8; FAC ¶ 36.

Regarding the second obligation, that the Property sell for FMV, the parties dispute the meaning of FMV for the purposes of the Settlement Agreement. *Compare* Second MTD at 5-6 with Second Opp'n at 8-9. Defendants argue that FMV for the purposes of the Settlement Agreement was to be set exclusively by the independent appraiser, as set forth in paragraph 11 of the Settlement Agreement. *See* Second MTD at 5-6. Plaintiffs retort that Defendants rely on the wrong provision of the Settlement Agreement, arguing that paragraph 6 dictates the FMV determination. Second Opp'n at 8-9.

Paragraph 6 of the Settlement Agreement provides "that the Defendant Res[7] will be sold in accordance with the terms of this Settlement Agreement for fairmarket value ("FMV"), as that term is defined pursuant to California Code of Civil Procedure Section 1263.320 . . . ." Paragraph 9 states the United States and Nguema will jointly select a qualified real estate appraiser licensed by the California Bureau of Real Estate Appraisers ('Appraiser') to perform an appraisal setting

---

[7] "Defendant Res" includes not only the Property but also a Ferrari and statues involved in the other DOJ actions against Nguema. *See* Settlement Agreement at 3.

forth the Defendant Real Property's FMV, as defined above." And paragraph 11 provides that "under no circumstance will the Defendant Real Property be sold for less than the Defendant Real Property's FMV, as determined by the Appraiser pursuant to Paragraph 9."

Defendants therefore argue that because the Property sold for above the Appraiser's determination of FMV, there can be no breach based on this theory. Second MTD at 5; *id.* at 5 n.5 Plaintiffs counter that the Appraiser's FMV was the absolute floor, but that the Settlement Agreement still required the Property to sell for the FMV as calculated pursuant to California Code of Civil Procedure § 1263.320.[8] Plaintiff's argument, thus, is premised on the implication that the Appraiser's determination of FMV was wrong, as evidenced by the multiple bids above $32 million (and possibly the fact that Oberfeld and Defendants flipped the house for nearly $70 million about a year later).

Because the Court has already indicated that it would find a breach of paragraph 8 of the Settlement Agreement, it does not need to reach this second theory of breach. However, it would appear that Plaintiffs are correct that the FMV of the Property was above the $32 million figure.

Turning to the Listing Agreement, it does not seem like Defendants separately challenge Plaintiffs' allegations of breach apart from its overlap with the Settlement Agreement. *See* Second MTD at 5 ("The FAC does not allege facts supporting a claim that Defendants breached their obligations under the Settlement Agreement (or the part of the Listing Agreement incorporating the Settlement Agreement.)"). The Court notes that Plaintiffs aver that:

> The Listing Agreement between Defendants and Plaintiffs imposed on Defendants, among other things, (i) a duty to present to Plaintiffs any and all offers for the property, (ii) a duty to use reasonable care and due diligence in carrying out the agreement, (iii) a duty to disclose all facts affecting the value or desirability of the property, (iv) fiduciary duties of the utmost care, honesty, integrity and loyalty, and (v) a duty to disclose any and all financial and other arrangements with the buyer in the case of a dual agency.

FAC ¶ 55. Plaintiffs clearly alleged that Defendants failed to disclose all offers for the Property, *see id.* ¶¶ 25-27, among other possible violations. As such, Plaintiff sufficiently pleaded breach of the Listing Agreement.

---

[8] Cal. Code of Civ. Proc. § 1263.320(a) defines FMV as: "the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available."

8

In sum, Plaintiffs have sufficiently alleged breaches of the Settlement and Listing Agreements.

    2. *Causation and Damages*

Defendants further argue that Plaintiffs have failed to sufficiently allege that Defendants' purported breaches caused Plaintiffs any harm. *See* Second MTD at 7-10. Specifically, Defendants contend that "the FAC only alleges two purportedly higher offers than what Oberfeld paid – one in December 2015 from an unnamed offeror, and another in February 2016 from Sam Hakim. However, none of the facts alleged about either of these purported higher offers raises the chance that they would have yielded more Sale Proceeds than the sale to Oberfeld above the speculative level, taking it from possible to plausible." *Id.* at 9 (internal quotation marks and citations omitted). Defendants continue that one of the alleged offers was "*not even an actual offer*, with the offeror only saying that he 'might' buy the Property." *Id.* (citing FAC ¶ 25). As to the second offer, Defendants argue that Plaintiffs fail to allege that it was binding. *See id.* at 10.

Defendants' arguments here are essentially frivolous. At the motion to dismiss phase, the Court must assume the truth of all factual allegations and read those allegations in the light most favorable to the plaintiff. Plaintiffs need not prove their case at this stage. Plaintiffs have pleaded that Defendants:

> [R]eceived an offer from another buyer for $8 million over the offer from Oberfeld, with 4% million payable to Umansky as a commission. Umansky presented the offer to Oberfeld, but not Sweetwater, which owned the property. Also undisclosed to Sweetwater, Umansky sent Hakim a counter-offer of $15 million on behalf of Oberfeld, with the same 4% commission to Defendants on the resale or "flip."

FAC ¶ 26. And that "by the time Umansky persuaded Sweetwater to accept Oberfeld's offer at $33.5 million, he was already secretly discussing sale of [sic] to a third party for almost $10 million more." *Id.* ¶ 25. Further, Plaintiffs allege that Defendants did not tell Plaintiffs or the United States about these offers (or potential offers). *See id.* ¶¶ 27, 36. The Court need not make "unwarranted deductions of fact" to conclude that Defendants' failure to disclose offers significantly higher than the accepted offer harmed Plaintiffs ability to sell the Property for the highest price. *Sprewell*, 266 F.3d at 988. If Plaintiffs had known that there were offers for millions of dollars more, they could have engaged in negotiations with those other offerors or used the offers as leverage to increase the Oberfeld offer. Whether those efforts would have worked is a

9

matter for evidentiary development and, eventually, jury determination. Defendants' argument that the allegations of causation are speculative because "extensive negotiations" and/or "puffery" are common in real estate sales flips on its head the presumption in favor of Plaintiff at the motion to dismiss phase. As such, the Court would conclude that Plaintiffs have sufficiently alleged the causation element of their breach of contract claims.[9]

### B. Breach of Fiduciary Duties

Defendants rehash the same causation argument to attack Plaintiff's breach of fiduciary duty claim. *See* Second MTD at 10-13. It fails for the same reasons.

### C. Violations of Statutes Governing Licensed Brokers

Plaintiffs base their third cause of action for "violations of statutes governing licensed brokers" on Cal. Bus. & Prof. Code § 10176 and Cal. Civ. Code § 2079.16. They allege that Defendants violated those statutes because they "made numerous substantial misrepresentations to Sweetwater in the course of the sale of the Property, [and] failed to disclose agreements with Oberfeld and others providing for secret profits and commissions in addition to commissions paid by Sweetwater under the listing agreement." FAC ¶ 51.

Cal. Bus. & Prof. Code § 10176, entitled "Investigations; conduct of business; grounds for suspension or revocation," states that "[t]he commissioner may . . . investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this state, and he or she may temporarily suspend or permanently revoke a real estate license at any time where the licensee . . . has been guilty" of various improprieties including "[m]aking any substantial misrepresentation," "[a]cting for more than one party in a transaction without the knowledge or consent of all parties thereto," or "claiming or taking . . . any secret or undisclosed amount of compensation, commission, or profit." Cal. Bus. & Prof. Code § 10176(a), (d), (g).

Cal. Civ. Code § 2079.16, entitled "Disclosure form," sets forth that "[t]he disclosure form required by Section 2079.14 shall have Sections 2079.13 to 2079.24, inclusive, excluding this

---

[9] Defendants cite to *Colby v. Newman*, No. CV 11-07413, 2013 WL 12125529 (C.D. Cal. Aug. 29, 2013), for support that Plaintiffs' damages allegations are too speculative to survive a motion to dismiss. *See* Second MTD at 8-9. *Colby* is not only non-binding but also unhelpful to Defendants' argument. In *Colby*, the court held that Plaintiffs' allegations of lost profits, stemming from defendants' alleged fraudulent inducement of plaintiffs to sell their business, were implausible because plaintiffs did not allege that they had received any other offers to sell the business. *See id.* at *6. Thus, the court held that "allegations of foregone corporate opportunities [were] entirely speculative." Here, by contrast, Plaintiff alleged that Defendants hid two higher bids – *i.e.*, foregone opportunities – from Plaintiffs and the United States.

section, printed on the back, and on the front of the disclosure form the following shall appear." The statute then goes on to delineate the duties and obligations so-called "dual agents" must disclose to his or her clients. *See id.*

### 1. Cal. Bus. & Prof. Code § 10176

Defendants first contend that Cal. Bus. & Prof. Code § 10176 is an administrative statute that does not give rise to a private right of action. *See* Second MTD at 13-14. Plaintiffs do not respond to Defendants' argument. *See generally* Second Opp'n; Second Reply at 10-11.

The plain text of the statute suggests that it is a regulatory provision that excludes a private right of action. For example, the statute only refers to actions that "the commissioner" may take including investigating possible violations or suspending or revoking a licensee's license. *See* Cal. Bus. & Prof. Code § 10176. It does not provide for any monetary penalties, nor does it set forth a mechanism by which the public may enforce its provisions. Further, the Court has not found a case where the violation of Cal. Bus. & Prof. Code § 10176 was found to be a separate cause of action from a breach of fiduciary duties or negligence claim. *See, e.g.*, *Kohl v. American Home Shield Corp.*, 2013 WL 12075971, at *2-*3 (S.D. Cal. 2013) (discussing § 10176 in connection with breach of fiduciary duty claim); *see also Huijers v. DeMarrai*, 11 Cal. App. 4th 676, 686 (1992) ("Such a statute providing exclusively for discipline against a licensee would ordinarily be found in the Business and Professions Code and not the Civil Code. For example, Business and Professions Code section 10176, subdivision (d) provides that the commissioner may discipline a real estate licensee for "[a]cting for more than one party in a transaction without the knowledge and consent of all parties thereto."). The fact that Plaintiffs' only reference to the statute in their Opposition is in the section about the breach of fiduciary duty claim only bolsters the Court's conclusion. *See* Second Opp'n at 15.

Therefore, the Court would be inclined to dismiss any claim solely premised on a violation of Cal. Bus. & Prof. Code § 10176.[10]

### 2. Cal. Civ. Code § 2079.16

As to Plaintiffs' Cal. Civ. Code § 2079.16 claim, Defendants argue that the statute does not impose any duties on brokers that are at issue here. *See* Second MTD at 15. Instead, they assert that Cal. Civ. Code § 2079.16 only requires that certain language be included on the standard

---

[10] The is a question as to whether Plaintiffs could utilize § 10176 as a basis for a claim under Cal. Bus. & Prof. Code § 17200.

11

"Disclosure Regarding Real Estate Agency Relationship" form, which brokers are required to give their clients per Cal. Civ. Code § 2079.14. *Id.* And that there are no allegations that Defendants failed to provide the form to Plaintiffs or that the form lacked the required language. *Id.* Plaintiffs respond that § 2079.16 requires not only the disclosure of the duties listed on the Form, but also that the agency comply with those requirements. *See* Second Opp'n at 24-25.

The Court agrees with Defendants that Plaintiffs' argument misses the point. *See* Second Reply at 11. Plaintiffs allege that Defendants violated the duties that § 2079.16 requires to be listed on the Form, but those allegations fall under the breach of fiduciary duty claim. *See* FAC ¶¶ 40-44. Section 2079.16 is just about what is required to be listed on the form. Tellingly, the complaints in the two cases Plaintiffs cite for support did not include independent claims for violations of § 2079.16; instead they asserted breach of fiduciary duty or deceit based of failure to disclose causes of action. *See Holmes v. Summer*, 188 Cal. App. 4th 1510, 1528 (2010); *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 408 (2000); *see also Legrama v. Fremont Inv. & Loan*, 2010 WL 5071600, at * 10 (N.D.Cal. Dec.7, 2010) (concluding that § 2079.16 does not provide a private right of action).

Because Plaintiffs do not allege that anything was amiss about the form that Defendants gave them, and because the breach of fiduciary duty allegations are already expressed in the breach of fiduciary duty cause of action, the Court would dismiss the statutory claim. If Plaintiffs believe that their statutory claims are distinct from their breach of fiduciary duty claim, they should explain how they are different at the hearing.

D.  Fraud and Negligent Misrepresentation

Defendants assert that Plaintiffs' fraud-based claims should be dismissed because Plaintiffs did not plead them with the requisite particularity under Rule 9(b) and because Plaintiffs did not sufficiently plead causation. *See* Second MTD at 16. In response, Plaintiffs argue that they bring both fraud by affirmative misrepresentation and fraud by omission claims, and that they have pleaded them with sufficient specificity. *See* Second Opp'n 21-24.

Under California law, to allege fraud a plaintiff must show: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (internal quotation marks and citation omitted); *see also Vess*, 317 F.3d at 1105.

12

   *1. Rule 9(b)*

  The Court will address the arguments relating to the alleged affirmative misrepresentations first. Plaintiffs highlight the following six statements as affirmative misrepresentations:

> (i) that the offer from Oberfeld was "all cash" not contingent on any third party financing, (ii) that Defendants were using their best efforts and due diligence to sell the property for Plaintiffs, (iii) that Oberfeld was ready, willing and able to close the sale within 60 days, (iv) that Sweetwater would be unable to find another buyer at the same or greater price if it did not waive the agreed deposit, extend escrow, and agree to a $1 million credit for repairs, (v) that Defendants were first offered the opportunity to "invest" in the Property only after all contingencies were satisfied, and (vi) that Oberfeld's offer was the highest.

FAC ¶ 59.

  Defendants first contend that Plaintiffs did not sufficiently allege the parties to the alleged misrepresentations because Plaintiffs "amalgamate[] Sweetwater and Nguema as 'Plaintiffs' without specifying whether one or the other (or both) of them were involved." *See* Second MTD at 17. This argument strikes the Court as weak considering that "[a]t all relevant times, Sweetwater's sole owner and managing member was Nguema." FAC ¶ 10. The point of Rule 9(b)'s heightened pleading requirement is to provide notice to Defendants about the allegedly fraudulent material; grouping Nguema and Sweetwater into "Plaintiffs" where Nguema is the only member of Sweetwater elides any concerns about proper notice. Defendants do not cite to any contrary precedent.

  Next Defendants argue that the FAC fails to plead the time and place of most of the alleged misrepresentations. *See* Second MTD at 17-18. The Court would agree. Even reading the FAC liberally, the Court would conclude that Defendants are correct that Plaintiffs neglected to plead the time and place of misstatements (i), (ii), (iii), and (vi). Because those misstatements were allegedly made to Plaintiffs, they should be aware of the general time and place that they were made. Or, as another judge in this district put it:

> If the communications were verbal, [Plaintiffs] must know where [they] and the representative of one or more of the defendants were when they took place. If the communications were sent via email, [Plaintiffs] must know where [they were] when [they] received the email, and possibly where the sender was as well. If [Plaintiffs] recall[] specific emails or conversations, moreover, [Plaintiffs] can plead them in detail, and thus give further content to the "who" and "when" of the fraud as well.

13

*Griffin v. Green Tree Servicing, LLC*, 166 F.Supp.3d 1030, 1058 (C.D. Cal. 2015). For misstatements (iv) and (v), the Court would conclude that Plaintiffs have sufficiently alleged the time – April 2016 and less than "two weeks before the close" – but have still failed to allege the place. *See* FAC ¶¶ 29-30.[11]

Plaintiffs' attempt to rebut Defendants' argument on this point is cursory to say the least. They merely state "[]he intentional fraud and negligent misrepresentation claims list the specific affirmative misrepresentations and incorporate by reference the preceding factual allegations about [sic] provide more than enough detail about those misrepresentations to satisfy Rule 9(b), and give notice of who made the statements, to whom, when and what was said." *See* Second Opp'n at 23-24. Plaintiffs' reliance on *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litig.*, 754 F. Supp. 2d 1145, 1190 (C.D. Cal. 2010) is also misguided as it relates to Plaintiffs' affirmative misrepresentation claims because that case concerned fraudulent non-disclosure.

Turning to the allegedly fraudulent non-disclosures, Plaintiffs allege that Defendants failed to notify Plaintiffs of:

> (i) the existence of offers for the property significantly higher than the offer from Oberfeld that they advised Plaintiffs to accept, (ii) that Oberfeld was unable or unwilling to close the purchase if he was unable to not find investors and other third party financing, (iii) that Defendants had been offered additional consideration by Oberfeld and other offerors, and (iv) the nature and existence of arrangements that would give them secret profits or consideration beyond their disclosed commissions.

FAC ¶ 60.

As the parties recognize, the Rule 9(b) standard is somewhat relaxed regarding allegations of fraud by concealment. *See* Second Opp'n at 21-22; Second Reply at 13. While the heightened pleading standard of Rule 9(b) still applies in fraudulent concealment cases, a plaintiff's claim "can succeed without the same level of specificity required by a normal fraud claim." *In re Toyota*, 754 F. Supp. 2d at 1189 (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)). "This is because requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state

---

[11] The Court does not envision it being difficult for Plaintiffs to add more detail to their allegations as to time and place. The statements would have all occurred during the time period that the parties were negotiating the sale of the Property, and Defendants typically operate in Los Angeles County. *See* FAC ¶¶ 11-12

laws prohibiting fraud-by-omission." *In re Toyota*, 754 F. Supp. 2d at 1189 (internal quotation marks and citation omitted). Therefore, while a plaintiff's "fraud by omission claim will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct," *Falk v. General Motors Corporation*, 496 F.Supp.2d 1088, 1098–99 (N.D. Cal. 2007), "[t]o survive a Rule 9(b) challenge, complainants must allege the what, why, and how of the defendant's fraudulent omission," *Roberts v. Gainsforth*, 2015 WL 12765021 (C.D. Cal. Apr. 28, 2015) (citing *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010)).

Here, the Court would find that Plaintiffs have sufficiently alleged the what, why, and how of the purported concealments. As to the existence of offers higher than Oberfeld's, Plaintiffs specifically allege two higher offers that Defendants failed to disclose to Plaintiffs. *See* FAC ¶¶ 25-26. Defendants allegedly did not disclose this information because they had a financial stake in Plaintiffs' acceptance of Oberfeld's offer, *see id.* ¶¶ 28-30, and the "how" speaks for itself – Plaintiffs allege that Defendants did not pass along information that they had a duty to disclose, *id.* ¶ 60. Similarly, Plaintiffs have sufficiently pleaded that Defendants withheld that Oberfeld was searching for third party investors to help purchase the house despite Oberfeld making an "as is" cash offer. *Id.* ¶ 22. Again, Plaintiffs allege that Defendants withheld this information for their own financial gain. Regarding alleged concealment (iii), the Court is not sure how that is different from concealment (i), so it believes the same analysis would apply. Finally, as to the nature and existence of arrangements that would give Defendants secret profits, Plaintiffs allege that Defendants entered into an investment deal with Oberfeld and was actively trying to flip the house to another buyer rather than trying to get the highest price for Plaintiffs. *See id.* ¶¶ 25-26. Such allegations are sufficient to put Defendants on notice about their allegedly fraudulent concealments.

In sum, the Court would conclude that Plaintiffs have failed to allege the affirmative misrepresentations with the requisite specificity. The Court would dismiss those claims with leave to amend. But, Plaintiffs have sufficiently alleged their fraudulent concealment claims. Further, because Plaintiffs do not distinguish between their fraud and their negligent misrepresentation claims, the Court is inclined to conclude that the negligent misrepresentation claim survives to the same extent as the fraud claim.

    2. *Causation and Damages*

Defendants are mistaken that Plaintiffs conceded causation. *See* Second Reply at 12.

15

Although Plaintiffs do not focus on the issue in their Opposition, they include a footnote that states, "Defendant's causation argument fails for the same reasons discussed above in connection with the breach of contract and breach of fiduciary duty claims." Second Opp'n at 24 n.1.

The Court would conclude that Defendants' causation arguments fail for the same reasons stated above. Plaintiffs have sufficiently alleged that Defendants withheld information regarding potentially higher offers and potential problems with Oberfeld's bid. If Plaintiffs had known this information, they could have plausibly negotiated a higher price for the sale of the Property, thus generating greater funds for the charity for the benefit of the people of Equatorial Guinea.

E.  Negligence and Negligence Per Se

Defendants contend that Nguema's – but not Sweetwater's – Negligence and Negligence Per Se action is time-barred. Defendants also argue that Plaintiffs have failed to allege that the negligence caused Plaintiffs any harm. *See* Second MTD at 22-23.

Plaintiffs allege that Defendants failed to exercise the requisite care by:

> (i) negligently seeking, negotiating and recommending offers for the property, which could have been sold for significantly more had they exercised the appropriate standard of care, (ii) failing to advise Plaintiff of the opportunity to sell the property at higher prices, (iii) advising Plaintiff not to terminate the sale to Oberfeld due to his breaches and instead advising Plaintiff to waive those breaches, and (iv) advising Plaintiff to agree to a $1.3 million repaid credit instead of terminating for failure to waive the inspection contingency.

FAC ¶ 73.

1. *Statute of Limitations*

The parties agree that Nguema's claims are subject to the two-year statute of limitations set forth in Cal. Civ. Proc. § 339(1). Second MTD at 22; Second Opp'n at 20; *see also Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011) ("A cause of action for professional negligence is generally governed by the two-year statute of limitations under Code of Civil Procedure section 339, subdivision (1).").

Defendants assert that any damages caused by the purported negligence would have accrued by the close of escrow in June 2016, but that Nguema did not join the suit until July 2019. Second MTD at 22-23.[12] Plaintiffs respond that Nguema's claims relate back to the filing of the

---

[12] Even though Sweetwater's initial Complaint was filed in March 2019, Sweetwater and Defendants had executed a tolling agreement to extend the statute of limitations by nine months. FAC ¶ 32.

16

original Complaint. *See* Second Opp'n at 19-20. Defendants do not address the relation back argument in their reply. *See generally* Second Reply.

While not typical,

> [A]n amendment changing plaintiff will "relate back" when:
>
> • The relief sought in the amended complaint is *identical* to that demanded originally (so that there is no prejudice to the defendants); and
>
> • The amendment brings in the real party in interest or otherwise corrects a purely technical deficiency; or substitutes a person or entity "sufficiently allied" with the person or entity named in the original complaint that they in effect are but one.

Phillips & Stevenson, *Federal Civil Procedure Before Trial: Ch. 8-F Amended and Supplemental Pleadings*, 8:1706 (Rutter Group 2019) (citing *Besig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271, 1278-79 (9th Cir. 1982)).

The Court would conclude that the addition of Nguema as a party in the FAC meets the above criteria. The claims in the FAC are functionally identical to those cited in the original complaint. *Compare* FAC *with* Complaint. And Nguema is the sole member of Sweetwater, such "that they in effect are but one." Thus, Defendants will suffer no prejudice from the amendment.

### 2. Failure to State a Claim

Defendants again argue that Plaintiffs failed to allege causation. Again, this argument fails for the reasons stated above.

### IV. Conclusion

Based on the foregoing discussion, the Court would **DENY in part and GRANT in part** Defendants' Second Motion to Dismiss. The Court would grant the motion as to the statutory violations cause of action, as well as to the fraud and negligent misrepresentation causes of action to the extent those rely on affirmative misrepresentations. The Court would deny the motion as to the remaining claims. The Court would allow Plaintiffs an opportunity to replead the claims dismissed herein.